Appellants Tom Lilley, Greg LeNoir, and Edmund Zoghby (Buyers) brought this action seeking specific performance of a contract for the sale of real property, or, in the alternative, damages of $18,000 from Appellee V.A. "Victor" Gonzales for his alleged breach of the same agreement. Both parties filed motions for summary judgment. The trial court granted Gonzales's motion while denying that of Buyers, who appeal.
We reverse.
Gonzales is the owner of a parcel of real property located at 309 West Indian Creek Drive in Mobile, Alabama. On May 29, 1981, Buyers submitted to Gonzales a written offer to purchase this property. One of the Buyers, Edmund Zoghby, a real estate agent for Roberts Brothers, Inc., of Mobile, acted as Buyers' representative. Gonzales thereafter evidenced his acceptance of Buyers' offer with his signature on that same instrument. Gonzales's signature was witnessed by Richard E. Miller, his agent in the proceedings.
The documentation used for the offer and acceptance was a standard preprinted purchase agreement form used by Roberts Brothers, Inc., for such transactions. The terms of the offer and acceptance were filled in on the preprinted form as appropriate. In addition, certain provisions of the agreement were deleted, and additional matters were handwritten in the margins. A typewritten addendum was attached to and made a part of the purchase agreement.
Both parties, in support of their motions for summary judgment, submitted to the trial court documents purporting to be copies of the original purchase agreement and addendum. While an apparent dispute exists between the parties as to which of the proffered documents represents a true and correct copy of the agreement, with modifications, executed by the parties, our examination of the record fails to disclose a genuine factual dispute relative to the issue here presented. The parties' purchase agreement provided that Buyers would pay Gonzales $33,500 for the property, to be paid as follows: $500 down as earnest money, which was paid by Buyers; $9,500 cash at closing; and a vendor's lien signed by Buyers for the remaining $23,500. The original terms of the vendor's lien as specifically enumerated in the purchase agreement were that it was to be paid at the rate of $225 per month for ten years; with interest at 12% per annum; with the unpaid balance to be entirely due at the end of ten years; and no penalty for prepayment at any time.
Closing was set for on or before July 2, 1981. Prior to July 2, 1981, Gonzales delivered to Roberts Brothers a vendor's lien deed for Buyers' signatures. Incorporated therein was the following:
 "If at any time the Grantees agree to, and or, convey, or alienate any or all of their interest in the above described property in any manner the entire balance of principal plus interest remaining thereon shall become immediately due and payable at the option of the grantor, his heirs or assigns."
Such provision is commonly referred to as a "due on sale" clause.
Close examination of the purchase agreement, signed by all parties, reveals a complete absence of any reference to a due on sale clause as being or becoming a part of the vendor's lien deed. Gonzales, in his supporting affidavit for summary judgment, states that he did "not know what goes into a Vendor's Lien Deed . . . but I do know what I wanted and that was what I have now been told is a `due on sale' clause in the deed. . . . If what I wanted was not in the instrument I signed then I didn't agree to the sale."
Buyers contend that as of July 2, 1981, they stood ready to close the transaction, but that Gonzales refused to execute a vendor's lien deed without a due on sale clause incorporated therein. Gonzales's attorneys tendered the vendor's lien deed with its due on sale clause to the office of Roberts Brothers Realty, Inc., on July 2, 1981. Thereafter, according to Gonzales, he instructed his attorneys to cancel the transaction *Page 163 
upon Buyers' refusal to pay the $9,500 due at closing and to sign the vendor's lien deed as amended. They cancelled the transaction by letter dated July 10, 1981.
Subsequent to the parties' execution of their purchase agreement, and prior to the date of closing specified therein, Buyers agreed to sell the aforementioned real property to a third party for the sum of $48,500. Buyers allege that, as a result of Gonzales's refusal to consummate the transaction, they lost that sale, and they therefore seek $15,000, representing the difference in the price Buyers were to pay Gonzales ($33,500) and the amount they were to receive from their resale ($48,500). Additionally, Buyers seek damages of $3,000 for time and monies allegedly expended in connection with these endeavors.
 I. The Purchase Agreement
Gonzales's motion for summary judgment was founded on the following: "(1) The instrument was not an agreement of sale because there was never a meeting of the minds on the `due on sale' clause. (2) If the instrument is an agreement of sale, then Plaintiffs failed to comply with the terms of same in that they did not close on time." Both contentions are without merit.
Gonzales's argument is premised upon a misconception of the time-honored phrase "meeting of the minds." It is true that there is no contract unless the parties assent to the same thing and in the same sense. But if one seeks to convey his meaning by expressions importing something different, or attaches to the proposition of the other a significance not authorized, whatever injury may result from the misunderstanding must be visited upon him. Thompson v. Ray,46 Ala. 224 (1871). Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach.
Professor Corbin, in his treatise on contract law, speaks to the issue of mutual assent as follows:
 "Agreement consists of mutual expressions; it does not consist of harmonious intentions or states of mind. . . . At present, however, what we observe for judicial purposes is the conduct of the parties. We observe this conduct and we describe it as the expression of a state of mind. It is by the conduct of two parties, by their bodily manifestations, that we must determine the existence of what is called agreement. That is what is meant by the anciently honored term `meeting of the minds.' That is what is meant by mutual assent.
 "[One] may be `bound' by a contract in ways that he did not intend, foresee, or understand. The juristic effect (the resulting legal relations) of a man's expressions in word or act may be very different from what he supposed it would be. . . . [B]ut it is of much greater importance to realize that the courts must determine the requirements of justice and that the legal effects thus given to expressions of agreement are seldom exactly what one or both of the agreeing parties supposed or expected." A. Corbin, Corbin on Contracts § 9 (1952).
It is axiomatic that if a contract is ambiguous the court will construe it most strongly against the party who drew it.Jewell v. Jackson Whitsitt Cotton Co., 294 Ala. 112,313 So.2d 157 (1975).
Where, however, the language of the contract is unambiguous and plain in its expression, the court cannot alter the agreement by construction but rather must expound it as made by the parties. Flowers v. Flowers, 334 So.2d 856 (Ala. 1976);Springdale Gayfer's Store Co. v. D.H. Holmes Co., 281 Ala. 267,201 So.2d 855 (1967).
Where a contract is unambiguous and plain in expression, we know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left. Springdale Gayfer's Store Co., supra., citing Lee v. Cochran, 157 Ala. 311, 313, 47 So. 581 (1908). *Page 164 
We do not think that the purchase agreement or the addendum is ambiguous. The essential provisions therein to convey, and more specifically the terms of the vendor's lien, are sufficient and definite enough to sustain an enforcement of the contract by this Court.
We find no evidence supportive of Gonzales's contention that, because of the familiarity of due on sale clauses in the Mobile area, buyers were laden with the burden of negating at the time the purchase agreement was negotiated any inference that such a clause would automatically become a part of any subsequent vendor's lien deed, despite its absence from the purchase agreement.
The purchase agreement and addendum were a valid contract, which, as such, was due to be enforced and adhered to by all parties.
 II. Buyers' Refusal to Close
Assuming arguendo, the existence of a valid contract, Gonzales next submits that Buyers breached the contract by their refusal to close on or before July 2, 1981, as mandated by the purchase agreement. We disagree.
Buyers' refusal to close was obviously the result of Gonzales's "after the fact" inclusion of an additional matter(i.e., the due on sale clause) not originally contained in the purchase agreement. Established principles of the law of contracts, even under the most liberal of interpretations, do not equate such action by buyers with a breach of the contract to purchase.
For the error noted, the judgment is reversed; and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.