THOMPSON, Presiding Judge.
Ronnie Ray Jones, Jr. ("the husband"), appeals from a judgment of the Madison Circuit Court ("the trial court") divorcing him from Dawn Rae Jones ("the wife").
The record indicates the following. The husband filed a verified complaint for a divorce on January 26, 2015. The wife answered and filed a counterclaim for a divorce. The litigation proceeded, and on November 18, 2015, the husband's attorney moved to withdraw from the case on the ground that the husband had retained other counsel. That same day, attorney Dana Delk filed her notice of appearance for the husband.
On December 30, 2015, the husband filed a motion asking the trial court to order mediation in the case because, he said, settlement negotiations had "stalled." A few weeks later, on January 15, 2016, the husband filed a motion asking the trial court to set the matter for a final hearing. The trial court set an April 11, 2016, trial date. On April 14, 2016, the trial court entered an "order of settlement." In the order, the trial court noted that the parties had told the trial court that the matter had been settled. The trial court ordered the parties to submit all final settlement documents within 30 days. Failure to do so, the trial court stated, would result in dismissal of the action.
On May 13, 2016, the wife filed a motion for the entry of a divorce judgment. In her motion, she stated that, on April 8, 2016, the parties had reached a settlement that disposed of all matters that were to be decided during the April 11, 2016, trial. The trial court was notified of the settlement, and on April 9, 2016, the parties signed a stipulation of agreement. The stipulation, which was attached to the motion as an exhibit, set forth the terms to be incorporated into a settlement agreement that was to be submitted to the trial court for the entry of a divorce judgment. On April 14, 2016, the same day the trial court entered its order requiring the parties to submit settlement documents to the court within 30 days, the wife submitted a packet to the husband's attorney that included a settlement agreement, an amended answer and waiver, the husband's "testimony," an income affidavit for the husband, *121 and the notice of compliance. As of the date of the filing of the May 13, 2016, motion, the wife said, the husband had refused to sign the documents.
On May 19, 2016, the husband's attorney, Delk, filed a motion to withdraw from the case on the ground that there had been a material breakdown in the attorney-client relationship. Delk stated that she could no longer represent the husband. She also stated that the husband would not be prejudiced by her withdrawal because, she said, he had "explicitly instructed [her] firm to withdraw." That same day, the trial court entered an order setting a hearing on "all pending motions" for May 31, 2016. The order setting the date and time of the hearing was also entered on the State Judicial Information System on May 19, 2016. On May 27, 2016, Delk filed a renewed motion to withdraw or, in the alternative, to be allowed to take part in the hearing scheduled for May 31, 2016, by telephone. Delk explained that her office was in Montgomery and that the hearing was to be held in Huntsville, three hours away. In the motion, Delk also explained that the husband had retained a new attorney, Griff Belser. Delk stated that she had contacted Belser and that he had indicated he would be representing the husband from that point forward. On May 27, 2016, Belser entered his notice of appearance for the husband.
On June 1, 2016, the trial court entered a judgment divorcing the parties. In the judgment, the trial court noted that the May 31, 2016, hearing had been held as scheduled but that neither the husband nor Belser had appeared. The trial court stated that it had granted Delk's motion to withdraw on the record. The trial court also stated that it had called Belser at his office telephone number and had left a message saying that if Belser did not contact the court by 9:30 a.m. (the hearing was set to begin at 9:00 a.m.) the hearing would proceed. When the trial court had not heard from Belser by 9:34 a.m., it called the matter for hearing. The trial court explained that it had admitted the parties' joint stipulation of agreement into evidence, along with other documents, and had taken testimony from the wife regarding the trial court's jurisdiction and the grounds for divorce. No transcript of the hearing appears in the record on appeal. The trial court "ratified and confirmed" the joint stipulation of agreement, noting that the husband had executed that document, and incorporated the terms of the parties' agreement into the divorce judgment.
On June 24, 2016, the husband filed a motion to alter, amend, or vacate the judgment. In the motion, Belser stated that he was unaware that the matter had been set for a final hearing on May 31, 2016. He also stated that the husband "contend[ed] he was not informed" of the hearing date. The husband said that he thought the hearing was on his previous attorney's motion to withdraw and that it was moot. Belser also stated that "as a cautionary move," when he entered his appearance, he reviewed information relating to the case in the Alacourt electronic court-system database, "and [the case] did not appear to be set for anything on May 31, 2016." Belser also said that he did not receive the telephone message the trial court left for him until after 9:30 a.m. on the day of the hearing. In the motion, the husband stated that he had evidence to present to the trial court that would show that the settlement agreement that had been presented to him to sign and that had been submitted to the court differed from the stipulation of agreement previously submitted and that he would like an opportunity to present that evidence to the court.
*122 The trial court set a hearing on the husband's postjudgment motion for August 22, 2016, at 9:00 a.m. The hearing was held as scheduled. At 5:24 p.m. on the day of the hearing, the husband filed an "addendum" to his postjudgment motion. In the "addendum," the husband claimed that he was confused about certain provisions in the agreement and that his "understanding of any agreement was not the same as what he signed." The wife filed a motion to strike that addendum, arguing that the husband had been given the opportunity to appear and to argue his postjudgment motion during the August 22, 2016, hearing, at which he had asserted that the settlement agreement presented for signing was not the same as the joint stipulation he had signed. The addendum, the wife said, was not timely; therefore, she said, the husband should not be given an opportunity to raise additional arguments.
On August 25, 2016, the trial court entered an order denying the husband's postjudgment motion, stating that the husband's arguments were without merit. The trial court found that the husband had signed the joint stipulation of agreement and was represented by counsel. It continued: "The Court was not provided any information to indicate that the [husband] was illiterate or under coercion at the time of the signing of the stipulation." After determining that the husband had not provided "any legitimate argument for not enforcing the agreement as signed," the trial court denied the husband's postjudgment motion. The husband filed a timely notice of appeal to this court. The wife did not favor this court with a brief on appeal.
On appeal, the husband contends that the trial court erred in denying his postjudgment motion. "Whether to grant relief under Rule 59(e), Ala. R. Civ. P., is within the trial court's discretion." Bradley v. Town of Argo, 2 So.3d 819, 823 (Ala. 2008). In support of his argument, the husband contends that the postjudgment motion was due to be granted because, he says, there was "no meeting of the minds" as to the parties' settlement. Thus, he asserts, the stipulation of agreement he signed is not valid and is unenforceable.
This court addressed a similar argument in Allen v. Allen, 903 So.2d 835, 840-41 (Ala. Civ. App. 2004). We wrote:
"The husband contends that the parties had not entered into an enforceable agreement because, he says, there was no 'meeting of the minds.' 'It is well settled that whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions.' SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co., 644 So.2d 892, 895 (Ala. 1994). In regard to the phrase 'meeting of the minds,' our Supreme Court stated in Lilley v. Gonzales, 417 So.2d 161 (Ala. 1982) :
" 'Gonzales's argument is premised upon a misconception of the time-honored phrase "meeting of the minds." It is true that there is no contract unless the parties assent to the same thing and in the same sense. But if one seeks to convey his meaning by expressions importing something different, or attaches to the proposition of the other a significance not authorized, whatever injury may result from the misunderstanding must be visited upon him. Thompson v. Ray, 46 Ala. 224 (1871). Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach.
" 'Professor Corbin, in his treatise on contract law, speaks to the issue of mutual assent as follows:
*123 " ' "Agreement consists of mutual expressions; it does not consist of harmonious intentions or states of mind.... At present, however, what we observe for judicial purposes is the conduct of the parties. We observe this conduct and we describe it as the expression of a state of mind. It is by the conduct of two parties, by their bodily manifestations, that we must determine the existence of what is called agreement. That is what is meant by the anciently honored term 'meeting of the minds.' That is what is meant by mutual assent.
" ' "[One] may be 'bound' by a contract in ways that he did not intend, foresee, or understand. The juristic effect (the resulting legal relations) of a man's expressions in word or act may be very different from what he supposed it would be.... [B]ut it is of much greater importance to realize that the courts must determine the requirements of justice and that the legal effects thus given to expressions of agreement are seldom exactly what one or both of the agreeing parties supposed or expected." A. Corbin, Corbin on Contracts § 9 (1952).
" '....
" 'Where a contract is unambiguous and plain in expression, we know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left.'
" Lilley, 417 So.2d at 163.
"Despite the husband's protestations that he did not understand the executed agreement and that the executed agreement did not represent what he thought he was agreeing to, the fact remains that he executed the agreement. ' "The purpose of a signature on a contract is to show mutual assent." ' Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1142 (Ala. 2003) (quoting Ex parte Rush, 730 So.2d 1175, 1177-78 (Ala. 1999) ). '[O]rdinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby.' Power Equip. Co. v. First Alabama Bank, 585 So.2d 1291, 1296 (Ala. 1991) ; see also Gunnels v. Jimmerson, 331 So.2d 247, 250 (Ala. 1976) ('The general rule of contract law is that when the parties reduce their agreements to writing, the writing is the sole expositor of the transaction and the intention of the parties, in the absence of mistake or fraud or ambiguity.')."
In denying the husband's postjudgment motion in this case, the trial court found that the husband had signed the joint stipulation of agreement and that he was represented by counsel. The trial court also found that the husband had failed to present any evidence to indicate that he was illiterate or under coercion at the time he signed the stipulation of agreement. Therefore, the trial court concluded, the husband had failed to provide the court with "any legitimate argument for not enforcing the agreement as signed."
As mentioned, the record on appeal contains no transcript of the final hearing in the divorce matter or of the hearing on the husband's postjudgment motion, meaning we cannot review the evidence or arguments presented to the trial court at those hearings. Based on the record before us, we cannot say that the trial court abused its discretion in denying the husband's motion to alter, amend, or vacate. See *124 Ex parte Howell, 974 So.2d 304, 306 (Ala. 2007) (holding that a silent record supports a judgment and that it is the duty of the appellant to file a complete and correct record on appeal).
The husband also contends that he did not have notice of the final hearing in this matter and that, therefore, his right to due process was violated when the trial court moved forward with the final hearing in the matter and then entered the divorce judgment without giving him an opportunity to be heard. In the husband's initial motion to alter, amend, or vacate the divorce judgment, counsel for the husband stated that he was unaware of the final hearing on May 31, 2016, and that the husband had said he was not informed of the matter. The husband also stated that he had evidence to present regarding the settlement agreement and that he would like an opportunity to present that evidence. In the motion, however, the husband did not raise an argument that his right to due process had been violated when the trial court proceeded with the trial without him and thereafter entered a judgment.
Again, there is no transcript of the hearing on the postjudgment motion. Therefore, we cannot say whether the husband made a due-process argument during that hearing. Under similar circumstances, our supreme court wrote in Ex parte Howell:"Because we cannot assume that Howell made the same arguments in the circuit court that he now makes on appeal, we are in the same situation as if he had sat mute at the hearing." 974 So.2d at 306. In other words, the effect of failing to provide this court with a transcript of the hearing on the postjudgment motion is the same as if the husband had not raised this issue before the trial court. It is well settled that an appellate court "cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992). Thus, we cannot reverse the trial court's judgment for that reason.
The husband also asserts in his appellate brief that this court should treat the divorce judgment as though it were a default judgment and set aside the judgment based on the factors set forth in Kirtland v. Fort Morgan Authority Sewer Service, Inc., 524 So.2d 600 (Ala. 1988). Again, however, there is no indication in the record before us that the husband argued the Kirtland factors in his postjudgment motion such that the trial court or this court could interpret the postjudgment motion as one seeking to set aside a default judgment. Therefore, this argument, too, is waived. Andrews, supra.
The husband has failed to demonstrate that the trial court abused its discretion in denying his postjudgment motion or in entering the divorce judgment. Therefore, the judgment is affirmed.
AFFIRMED.
Pittman, Moore, and Donaldson, JJ., concur.
Thomas, J., concurs in the result, without writing.