MURDOCK, Justice.
 

 A & B Transport, Inc., a Louisiana corporation, and James Allemang petition this Court for a writ of mandamus directing the Calhoun Circuit Court to vacate its order granting relief pursuant to Rule 60(b)(6), Ala. R. Civ. P., and to enter an order denying such relief. We grant the petition and issue the writ.
 

 
 *926
 
 In November 1999, a vehicle occupied by-Henry Graben and his wife, Una J. Gra-ben, collided with a tractor-trailer rig operated by Allemang, an employee of A & B. Una died as a result of the collision; Henry was injured. In November 2000, Henry, both in his individual capacity and in his capacity as the personal representative of Una’s estate, filed an action in the Calhoun Circuit Court against A & B and Allemang based on the alleged wrongful death of Una and his personal injuries.
 

 A & B and Allemang were insured by Legion Insurance Company, which was placed in receivership in Pennsylvania in April 2002.
 
 [1]
 
 In October 2002, on the date scheduled for the trial of Henry’s action, Henry, A & B, and Allemang entered into a settlement agreement on the record. The transcript of the settlement-agreement colloquy reflects that a judgment would be entered against A & B and Al-lemang for $750,000, but that “[enforcement of the judgment [would] be limited specifically to the insurance carriers that could have applicable coverage and/or the guarantee funds that may have applicable coverage.” The coverage limits under Legion’s insurance policies insuring A & B and Allemang exceeded the amount of the judgment. The transcript of the settlement-agreement colloquy also reflects the following discussion between Shane On-cale, the attorney representing A & B and Allemang; Henry’s counsel; and the trial court:
 

 “[Shane Oncale]: ... In addition I will say for the record that Legion Insurance and their third party administrator have objected vigorously to any sort of consent judgment to be entered, but I’m here and I represent A & B Transport, and A & B Transport wishes to protect its interests and protect itself against future exposure on this claim[
 
 2
 
 ]
 

 [[Image here]]
 

 “[Henry’s counsel]: Judge, just for the record too, I’d like the record to reflect that it is [Henry’s] understanding that the insurance carrier, Legion Insurance, who insures all the defendants in the case and also had the excess coverage, has been ordered into liquidation according to what has been represented to us, and they have that, you know, on appeal, and that is a factor in entering into our decision in entering into the settlement.
 

 “[Shane Oncale]: Sure. Let me make sure this is clear. I think there’s been a liquidation order entered that is being challenged and there’s a hearing on that in about three weeks on a stay that was technically in effect until December 30. I don’t think it’s correct to say it’s on appeal. I want to make sure that’s clear. It would be the same as if you
 
 *927
 
 entered an order and someone entered a motion for a new trial, for example.
 

 “THE COURT: But the order is being contested in some manner?
 

 “[Shane Oncale]: Correct.
 

 “THE COURT: Okay. All right.”
 

 On December 20, 2002, the trial court entered a “Consent Decree”; that order states:
 

 “The above referenced case came before this Honorable Court for trial on October 21, 2002. At that time, the parties engaged in significant negotiations that resulted in an agreement that a compromise judgment of $750,000 be entered in favor of [Henry] ... and against the defendants [A & B and Al-lemang]. As an express condition of this compromise judgment, [Henry] agreed to limit execution and enforcement of the judgment to any and all applicable policies of insurance and/or any and all available funds from the applicable Guarantee [Fund] Associations. [Henry] agree[s] to hold harmless [A & B and Allemang] against any attempts to collect against their personal or corporate assets and further release them from any and all claims associated with the automobile accident in question. The defendants make no representation as to the collectability of the judgment and all risks associated with the collecta-bility of the judgment herein entered falls upon [Henry],
 

 “Consistent with the agreement of the parties, it is, therefore, ORDERED, ADJUDGED, and DECREED:
 

 “A. That [Henry] ... recover the sum of Seven Hundred Fifty Thousand Dollars ($750,000) from the defendants [A & B and Allemang].
 

 “B. That the recovery by [Henry] ... be expressly limited to any and all insurance proceeds and/or any and all funds available under any and all applicable Guarantee Fund Associations and are expressly prohibited from any collection attempts against the assets of [A & B and Allemang] .... ”
 

 In July 2003, Legion was declared insolvent. Thereafter, Henry filed a proof of loss with the Louisiana Insurance Guaranty Association (“LIGA”),
 
 [3]
 
 which allegedly provided coverage for Henry’s claims against Legion. If Henry’s claims qualified as covered claims, Henry apparently would have been entitled to $150,000 per claim, or a total of $300,000, less a small deductible. LIGA refused to pay Henry’s claims.
 

 In June 2004, Henry filed a motion in the trial court to enforce the consent judgment against LIGA. In August 2004, the trial court entered an order stating that the consent judgment was binding on LIGA and that Henry could “pursue all remedies available to collect the judgment.” LIGA filed a motion to quash the August 2004 order, claiming that LIGA was not a party to Henry’s action that had resulted in the consent judgment, that it was not served with process in connection with the action, and that it had had no opportunity to be heard concerning the alleged settlement. In October 2004, the trial court entered an order setting aside its August 2004 order, with leave for Henry to serve LIGA with process and subsequently to request that the court readdress the issue of LIGA’s liability.
 

 
 *928
 
 On November 16, 2004, Henry apparently filed a separate action directly against LIGA in the Calhoun Circuit Court.
 

 In June 2006, Henry filed a Rule 60(b)(6), Ala. R. Civ. P., motion in his action against A & B and Allemang, seeking relief from the trial court’s December 20, 2002, consent judgment. Among other things, Henry asserted as follows in his Rule 60(b)(6) motion:
 

 “5. On November 16, 2004, [Henry] filed a Complaint against LIGA, and [A & B and Allemang] in this suit, under Alabama’s direct action statute, Ala. Code [1975,] §
 
 21-23-1.[
 

 4
 

 ]
 
 (In the Circuit Court of Calhoun County, Alabama, Civil Action No. 04-1011).
 

 “6. LIGA has vigorously defended the collateral suit, raising a number of defenses to enforcement of the Consent Decree, chief among these the fact that A & B and Allemang consented to entry of the Consent Decree without permission of Legion, and therefore breached the policy at issue.
 

 “7. In the course of discovery, it has come to light that between the time the Consent Decree was read into the record (October 21), and the time it was actually entered as a judgment (December 20), Legion officials authorized attorney Shane Oncale to settle this cause for $800,000.00, with the provision that [Henry] would have to wait out Legion’s ongoing problems before seeking payment. According to an e-mail from On-cale, dated Friday, November 22, 2002:
 

 “ ‘... [I]n order to avoid further litigation of the issue and to protect Legion’s exposure, Tom [Carey, an insurance adjuster for Legion,] has authorized a post judgment settlement in the amount of 300K.’
 

 “8. At no time between the date of the e-mail (November 22) and the date the Consent Decree was entered was [Henry] made aware that Legion was prepared to settle this case. In fact, [Henry] did not become aware of this fact until the deposition of Legion adjuster Tom Carey, taken in late 2005.[
 
 5
 
 ] Had [Henry] been aware that Legion offered to indemnify its insureds in return for entry of a judgment of $300,000.00, [Henry] would have readily accepted same, in light of the fact that the coverage issues which have dogged this case for years would have evaporated.
 

 “9. Rule 60(b)(6) allows a party to be relieved from a judgment more than four (4) months after the judgment has been entered in cases involving exceptional circumstances which implicate equitable grounds for allowing the moving party relief.
 
 Shipe v. Shipe, 477
 
 So.2d 430, 432 (Ala.Civ.App.1985) (citation omitted).
 

 
 *929
 
 “10. If ever a circumstance cried out for the steady hand of equity, the present one certainly qualifies. Henry Gra-ben lost his wife in a terrible accident, as well as suffering his own personal injuries. Through no fault of his own, his effort to obtain justice has been stymied by the fact that the tortfeasors secured liability and umbrella insurance with the same mediocre company, which subsequently went belly up. In an effort to protect Mr. Graben’s chances at any future recovery, [Henry’s] counsel agreed to a Consent Decree which would at least allow for the opportunity to pursue relief at a later stage. However, unbeknownst to anyone, a month before the Consent Decree was made final Legion was in fact willing to settle this claim for a fair and reasonable amount. The fact that [Henry] was not aware that Legion was willing to settle this case on behalf of its insureds was an incidence of severe prejudice that can only be corrected by setting aside the Consent Decree and allowing this case to proceed.”
 

 (References to exhibits omitted.)
 

 A & B and Allemang filed a response to Henry’s Rule 60(b)(6) motion, asserting (1) that Henry’s motion was “not adequately supported,” “lack[ed] a factual basis,” “contain[ed] misstatements of facts,” and “[was] not supported by affidavit or other testimony,” and (2) that Henry’s motion was untimely. In support of the former assertion, A & B and Allemang noted that Henry had filed no affidavit to support his assertion that he was not “made aware that Legion was prepared to settle [the] case” for $300,000. Also, A & B and Allemang filed an affidavit from Oncale in which he stated: “Contrary to the assertions contained in [Henry’s] motion, Legion’s offer to modify the $750,000.00 Consent Decree to a $300,000.00 Consent Decree was offered to [Henry] before the Consent Decree was entered by the Court.” A
 
 &
 
 B and Al-lemang also filed a document reflecting November 22, 2002, e-mails between On-cale and representatives from Legion concerning the $300,000 settlement offer; On-cale’s time-entry records, which reflect that he had settlement discussions with Henry’s attorneys after the October 2002 settlement proceedings and after Legion discussed the $300,000 settlement offer with him but before the entry of the consent judgment; and a copy of a letter dated December 12, 2002, from Oncale to Shane Gustafson, an employee of Ward North America who apparently was connected with Legion’s settlement of the claim, concerning the rejection by Henry’s attorneys of the $300,000 settlement offer.
 

 A portion of a November 22, 2002, email transmission from Oncale to Gustaf-son states:
 

 “Ok, Tom [Carey] is clear that there is no exposure to the insureds under the current 750K judgment and that there may exist valid contractual and legal defenses that could be raised by Legion against any collection attempts by [Henry], Nonetheless, in order to avoid further litigation of the issue and to protect Legion’s exposure, Tom has authorized a post judgment settlement in the amount of 300K. This settlement would benefit [Henry] by removing Legion’s contractual and legal defenses against collection. The settlement benefits Legion by limiting its exposure and by curtailing the need for further litigation on the contractual and legal defenses. The settlement benefits the insured because it wipes out the outstanding judgment that would otherwise attach to their credit. I will present the offer, take it or leave it, to [Henry] and try hard to sell it because it obviously is to everyone’s benefit. I will report when I hear something.”
 

 
 *930
 
 Oncale’s time records include the following entry for December 3, 2002: “Meeting with [Henry’s attorneys] to discuss offer of settlement made by Legion and the benefits to all parties in the acceptance of such an agreement.” They also include the following entry for December 5, 2002: “Correspondence to Mr. Gustafson and Mr. Carey reporting on rejection of offer by [Henry] and our strategy.” An entry of December 10, 2002, states: “Correspondence to Mr. Gustafson regarding rejection of our offer of settlement and contact with State Farm on underinsured motorist claim.”
 

 The December 12, 2002, letter from On-cale to Gustafson states:
 

 “This letter will confirm that I have now had an opportunity to meet with [Henry’s attorneys].... Despite my urgings to the contrary, they have refused to take our settlement offer in the amount of $300,000. Instead, they intend to go forward with the attempted enforcement of the Consent Judgment entered in the amount of $750,000.
 

 “To this end, I have now also been contacted by the attorneys representing the uninsured/underinsured motorist carrier for Henry. ... It appears that [Henry] has now made a claim back against his own insurance carrier for the anticipated shortfall between the $300,000 collectible from the [LIGA] and the $750,000 judgment....
 

 “Based on my conversations with [Henry’s] attorneys, it seems likely that they will simply wait for a liquidation order to be entered rather than file an appearance ... in the rehabilitation case seeking to enforce the judgment. Regardless, it does not appear that our efforts to resolve this case by negotiated settlement will be fruitful. [Henry] will now risk the defenses available to both Legion and [LIGA] should Legion ultimately go into liquidation. Apparently, they do not feel the defenses are very viable.
 

 “Regardless, [Henry’s] rejection of our post-judgment settlement offer brings our handling of this case to a conclusion.”
 

 Also, in support of their assertion that Henry’s motion was untimely, A
 
 &
 
 B and Allemang noted that even if Henry did not learn of the $300,000 settlement offer until Carey’s deposition in late 2005, he nonetheless waited over six months after he allegedly learned of the $300,000 offer to file his Rule 60(b) motion.
 

 In October 2006, the trial court entered an order, which had been prepared by Henry’s counsel. That order states, in part:
 

 “[Henry’s attorneys] have stated that they have no recollection of whether Legion’s offer to settle for $300,000 was ever communicated to them. Attorney Shane Oncale, who represented A & B and James Allemang in the initial suit, has presented circumstantial evidence that he apprised [Henry’s] counsel of Legion’s settlement offer, in the form of correspondence from Oncale to the Legion adjuster, and time sheets indicating that Oncale met with [one of Henry’s attorneys] at or around this time. However, Oncale has also informed the Court that he has no recollection of such a meeting, and there is no correspondence from Oncale to [Henry’s attorneys] that would confirm same.”
 

 The order also notes that Rule 60(b)(6) relief is not appropriate where the exceptional circumstances warranting relief are those covered by another part of Rule 60(b), namely the grounds described in Rule 60(b)(1) through 60(b)(5). The order concluded that the grounds described in Rule 60(b)(3) through 60(b)(5) were inapplicable. It further concluded:
 

 
 *931
 
 “Rule 60(b)(1) allows a party four months to seek relief from judgment based on ‘mistake, inadvertence, surprise, or excusable neglect.’ Mistake is that prong of 60(b)(1) that could be applied to this action. However, under these facts, the Court finds that there was no mistake that led to entry of the judgment. At the time the judgment was entered, the parties put to paper their understanding or the terms of the judgment. Neither party disputes the same. Neither party claims that they did not understand, or had a mistaken understanding as to the terms of the judgment. Simply put, there was no ‘mistake’ that caused the judgment to be entered. Consequently, 60(b)(1) does not bar [Henry’s] motion.
 

 “Rule 60(b)(2) is the newly discovered evidence ground for relief which also must be asserted within four months from the entry of judgment. Like the mistake exception discussed above, a cursory examination of the facts implicates newly discovered evidence in the form of the allegedly previously unknown $800,000.00 settlement offer as the basis of [Henry’s] motion. A closer reading though, indicates that [Henry] has not asserted discovery of the $300,000.00 offer as a ground for relief from the judgment, but as factual evidence related to the parties understanding of and relation to the events giving rise to the judgment. The Court cannot say that [Henry] has definitively argued newly discovered evidence as a sole and independent ground for relief from the judgment. Therefore, plaintiffs motion is not encompassed by Rule 60(b)(2).”
 
 [6]
 
 The order then concluded that the facts reflected “ ‘exceptional circumstances’ that cast a pall over the judgment and implicate this Court’s power and duty in equity to see that justice is done.” The order granted Henry’s motion to set aside the consent judgment and required the court clerk to return the case to the active docket.
 

 Standard of Review
 

 A & B and Allemang seek relief from the October 2006 order by way of the writ of mandamus.
 

 “ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ”
 

 Ex parte Perfection Siding, Inc.,
 
 882 So.2d 307, 309-10 (Ala.2003) (quoting
 
 Ex parte Integon Corp.,
 
 672 So.2d 497, 499 (Ala.1995)). A petition for the writ of mandamus is a proper method for attacking the grant of a Rule 60(b) motion.
 
 See Ex parte Baker,
 
 459 So.2d 873 (Ala.1984).
 

 Rule 60(b) states:
 

 “On motion and upon such terms as are just, the court may relieve a party or a party’s legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under
 
 *932
 
 Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken.”
 

 As this Court stated in
 
 Ex parte Baker:
 

 “Without question, a movant must both allege and prove one of the grounds set forth in Rule 60 in order to be granted relief under that rule. Moreover, because Rule 60(b) relief is extraordinary relief, a movant has the burden of proving extraordinary circumstances and/or extreme hardship or injustice sufficient to entitle him to relief under Rule 60(b)(6). And, while the decision of whether to grant or deny the motion is within the sound discretion of the trial judge, that discretion is not unbridled.”
 

 459 So.2d at 876 (citations omitted);
 
 see also Wood v. Wade,
 
 853 So.2d 909, 913 (Ala.2002) (“Rule 60(b)(6) is an extreme remedy and relief under Rule 60(b)(6) will be granted only ‘in unique situations where a party can show exceptional circumstances sufficient to entitle him to relief.’ ” (quoting
 
 Nowlin v. Druid City Hosp. Bd.,
 
 475 So.2d 469, 471 (Ala.1985))). Where the party seeking Rule 60(b)(6) relief fails to allege and prove the grounds justifying that relief, the trial court exceeds its discretion by granting the motion.
 
 Ex parte Baker,
 
 459 So.2d at 876.
 

 Sufficiency of the Evidence
 

 A & B and Allemang argue that Henry’s “motion lacked any factual support for his contentions regarding the $300,000 offer,” and, therefore, that the trial court exceeded its discretion when it granted Henry’s Rule 60(b)(6) motion.
 
 [7]
 
 In part, A
 
 &
 
 B and Allemang note that Henry’s
 

 “attorneys have not provided any affidavits to support their contention that the offer was not made, likely because they cannot affirmatively state the $300,000 offer of judgment was not made; they simply do not remember one way or another. Not remembering if an offer was made is entirely different than knowing that an offer was not made.”
 

 By contrast, A
 
 &
 
 B and Allemang note that their “attorney does recall such conversations and has evidentiary support for his position that the offer was indeed made, including affidavits, billing records and email correspondence between the parties’ attorneys. [Henry] has made no effort to repudiate this evidentiary support.”
 

 Before discussing A & B and Al-lemang’s argument, we first note that where there are disputed issues of fact to be resolved and the trial court has received ore tenus evidence, the ore tenus rule is applicable to our review of a ruling on a Rule 60(b)(6) motion.
 
 See Shipe v. Shipe,
 
 477 So.2d 430, 432 (Ala.Civ.App.
 
 *933
 
 1985). In the present case, however, the material “facts,” as hereinafter discussed, were not in dispute, and the trial court did not receive ore tenus evidence. Thus, the trial court’s order setting aside the consent judgment is subject to de novo review.
 
 Beavers v. County of Walker,
 
 645 So.2d 1365, 1373 (Ala.1994) (“[Because the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court’s ruling, and this Court must review that application of the law
 
 de novo.”).
 

 The materials before us do not reflect that Henry made any evidentiary submission in support of his Rule 60(b)(6) motion; they reflect only that his attorneys stated to the trial court that “they have no recollection of whether Legion’s offer to settle for $300,000 was ever communicated to them.” A & B and Allemang, by contrast, submitted two affidavits from Oncale and written materials in support of their argument that Oncale discussed the $300,000 settlement with Henry’s attorneys before the consent judgment was entered. In one affidavit, Oncale stated, in part, that he remembered
 

 “vividly having a telephone conference with [Henry’s attorneys] attempting to explain the fact that Legion was willing to make the $300,000 settlement offer, but could not pay any money. [One of Henry’s attorneys] responded by stating, ‘Why should I take a $300,000 judgment when I already have a $750,000 judgment?’ I responded by saying ‘Legion is certain that you will never be able to collect more than the $300,000.’ [Henry’s attorney] responded by stating ‘my research shows that I can collect the $300,000 judgment against the Guarantee Association and still collect underin-sured motorist benefits.’ Within days of this discussion I was in fact contacted by State Farm inquiring about the judgment, settlement discussions and the demand made for payment by [Henry].”
 
 [8]
 

 Henry offered no testimony or other evidence to contradict Oncale’s assertion that this telephone conversation occurred.
 

 Oncale also asserted that the materials submitted with his affidavits, including, in part, the e-mail correspondence between him and Gustafson, his billing records, and his December 12, 2002, letter to Gustafson, supported his recollection that the $300,000 offer was communicated to Henry’s attorneys. Oncale stated further that his billing records reflected that he had a meeting with Henry’s attorneys on December 3, 2002, to discuss the settlement. It is true that the October 2006 order by the trial court states that Oncale informed the court that he had “no recollection of such a meeting.” It is also true that the materials before us do not include “correspondence from Oncale to
 
 [.Henry’s attorneys
 
 ] that would confirm” that a meeting occurred. (Emphasis added.) Even if On-cale had no recollection as to the occurrence of a meeting, his billing records and the December 12, 2002, letter to Gustafson constitute affirmative evidence that a meeting did occur. There is no suggestion that any of the materials A & B and Allemang submitted in opposition to Henry’s motion were falsified or inaccurate.
 

 Aside from the issue whether a face-to-face meeting occurred, however, there is nothing in the materials before us to support the conclusion that Oncale did not properly remember that he had communicated the $300,000 offer to Henry’s attorneys. The materials before us contain undisputed evidence that Oncale did communicate the $300,000 offer to Henry’s attorneys.
 

 
 *934
 
 Again, according to the October 2006 order, Henry’s attorneys only “stated that they have no recollection of whether Legion’s offer to settle for $300,000 was ever communicated to them” — this is not a denial that Oncale communicated the offer to them or evidence indicating that Oncale failed to communicate the offer to them. In fact, Henry states in his appellate brief that his attorneys
 

 “have no recollection of this offer ever being conveyed to them,
 
 but the evidence produced by petitioners certainly suggests that the offer was made at some time before the consent decree was entered as a final judgment.
 

 “After learning of the presence of the $300,000.00 offer
 
 and not recalling the fact that the offer had ever been brought to their attention,
 
 counsel for [Henry] filed a Rule 60(b)(6) Motion for Relief from Judgment, arguing that equity demanded that the consent decree be set aside so that the parties could start fresh.”
 

 (Henry’s brief pp. 6-7.) Henry’s appellate brief further states: “[I]n light of defendants’ evidentiary showing, [Henry] concede^] that it is more likely than not that [his attorneys] did have knowledge of the offer before the consent decree was entered.” (Henry’s brief p. 13 at n.9.)
 

 Based on the foregoing, we conclude that Henry failed to meet his “burden of proving extraordinary circumstances and/or extreme hardship or injustice sufficient to entitle him to relief under Rule 60(b)(6).”
 
 Ex parte Baker,
 
 459 So.2d at 876. All Henry proved, if anything, was that his attorneys could not recall whether they received notice of the $300,000 settlement offer. Absent evidence that would support a finding that Henry did not receive the offer, he could not prove that he would be entitled to relief pursuant to Rule 60(b)(6) (assuming, without deciding, that such relief would be proper if the $300,000 offer was not communicated to Henry’s attorneys).
 
 See
 
 note 7,
 
 supra.
 

 Finally, Henry argues in his appellate brief that, even if the $300,000 offer was communicated to his attorneys, he should still be entitled to relief pursuant to Rule 60(b)(6) because “the parties were in a difficult situation” concerning settlement in light of the rehabilitation proceedings regarding Legion. In other words, Henry argues that he should be allowed to set aside the $750,000 settlement offer he accepted because of the difficult financial circumstance confronting the parties in 2002 and because he has been unable to enforce that settlement so as to obtain the monetary result he desired (apparently being under the impression that LIGA will then make some more definite and acceptable settlement offer). It is well settled, however, that ‘“Rule 60(b)(6) [cannot] be used “for the purpose of relieving a party from the free, calculated, and deliberate choices he has made.” ’ ”
 
 See Ex parte Wal-Mart Stores, Inc.,
 
 725 So.2d 279, 285 (Ala.1998) (quoting
 
 Chambers County Comm’rs v. Walker,
 
 459 So.2d 861, 866 (Ala.1984), quoting in turn 11 C. Wright & A. Miller,
 
 Federal Practice & Procedure
 
 § 2864, at 214-15 (1973)).
 
 [9]
 

 Conclusion
 

 In light of the foregoing, A & B and Allemang’s petition for the writ of mandamus is due to be and is hereby granted. The trial court is directed to vacate its order granting Henry’s Rule 60(b), Ala. R.
 
 *935
 
 Civ. P., motion and to enter an order denying the motion.
 

 PETITION GRANTED; WRIT ISSUED.
 

 SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
 

 COBB, C.J., concurs in the result.
 

 [1]
 

 . The April 2002 order that placed Legion in receivership appointed the insurance commissioner of Pennsylvania as Legion's "Rehabili-tator,” and it directed the Rehabilitator "to take immediate possession of [Legion's] property, business and affairs ... and to take such action as the nature of this case and the interests of the policyholders, creditors, or the public may require.” The order also states, in part:
 

 "No judgment, order or arbitration award against Legion or an insured of Legion entered after the date of filing of the Petition for Rehabilitation and no judgment, order or arbitration award against Legion or an insured of Legion entered at any time by default or collusion need be considered as evidence of liability or quantum of damages by the Rehabilitator.”
 

 [2]
 

 . In Henry’s appellate brief, he admits that at the time of the settlement discussions "Legion ... had essentially withdrawn from providing any meaningful defense for” A & B and Al-lemang and that A & B and Allemang "were obviously concerned about the fact that Legion’s ongoing financial problems had prejudiced the defense of the case.”
 

 [3]
 

 . The materials before us reveal that A & B was a Louisiana corporation; it does not otherwise address the relationship between Legion and LIGA upon which LIGA’s alleged liability is based.
 

 [4]
 

 . Section 27-23-1 states:
 

 "As to every contract of insurance made between an insurer and any insured by which such insured is insured against loss or damage on account of the bodily injury or death by accident of any person for which loss or damage such insured is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurer shall become absolute and the payment of the loss shall not depend upon the satisfaction by the insured of a final judgment against him for loss, or damage or death occasioned by the casualty. No such contract of insurance shall be cancelled or annulled by any agreement between die insurer and the insured after the .insured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.”
 

 According to Henry's appellate brief, his "direct action” against LIGA has been stayed pending this Court's resolution of die present mandamus petition.
 

 [5]
 

 . Based on the materials before us, it appears that Carey’s deposition took place on November 30, 2005.
 

 [6]
 

 . A & B and Allemang did not argue to the trial court that relief under Rule 60(b)(6) was inappropriate because some other provision of Rule 60(b) applied. On appeal, they make a one-sentence argument, without citing any authority, that Henry’s motion "should have been a Rule 60(b)(2) motion for newly discovered evidence” if "he did not become aware of the $300,000 offer until November 30, 2005, at the deposition of Legion adjuster Tom Carey," and, consequently, that "such motion must have been made not more than four months after the proceeding.” We therefore do not address this issue.
 

 [7]
 

 . A more fundamental issue than that discussed in the text would be whether an insurer or an insured has an underlying duty to a plaintiff to communicate a settlement offer (1) that the insurer and insured have discussed among themselves and/or (2) that the insurer or the insured has decided it is willing to make to the plaintiff. The petitioners in this case make no argument to this Court in that regard, however, and our opinion therefore does not address this issue.
 

 [8]
 

 . Henry ultimately recovered $35,000 in uninsured-motorist insurance proceeds.
 

 [9]
 

 . A & B and Allemang also contend that the trial court should have denied Henry’s Rule 60(b)(6) motion (1) because it was untimely filed and (2) because of the application of the doctrine of laches. Because of our disposition of this petition as discussed above, we pretermit any discussion of these additional grounds.