The wife appeals from a judgment denying her Rule 60(b), A.R.Civ.P., motion for relief from a divorce judgment.
The parties were divorced on March 25, 1994. The judgment of divorce incorporated an "agreement" of the parties.
On April 20, 1994, the wife, Terri Ann Elliott, filed a motion to set aside the judgment, alleging that the "agreement" incorporated therein was a direct product of mistake on her part, and harassment, undue coercion, and misconduct on the part of the husband, Billy Lee Elliott. Following oral proceedings, the trial court denied the wife's motion. She appeals and asserts that the trial court erred in refusing to grant her requested relief.
It is clear that the "agreement", if it can be termed such, was signed by the wife under conditions of duress, coercion, misrepresentation, and deceit. We reverse the trial court's order.
Rule 60(b) provides: *Page 118 
 "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; . . . (5) . . . it is no longer equitable that judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."
Whether to grant a Rule 60(b) motion is within the discretion of the trial court. Delchamps v. Delchamps, 449 So.2d 1249
(Ala.Civ.App. 1984). The committee comments to Rule 60(b) indicate what is required when exercising this discretion: "In exercising this discretion, the court must balance the desire to remedy injustice against the need for finality of judgments." See also Robinson v. Robinson, 490 So.2d 917
(Ala.Civ.App. 1986).
After reviewing the record, we find it obvious that the trial court failed to remedy an injustice. The pertinent facts are as follows: The parties were married March 22, 1980. Two children were born during the marriage; at the time of the divorce the daughter was age nine and the son was age four. The wife worked and provided the primary support for her husband while he attended law school. The wife has a two-year junior college degree, and is employed as a lab technician. The husband has practiced law for approximately eight years. Forty percent of his practice is domestic relations work.
On January 31, 1994, the wife employed attorney Jim Fullan to sue for divorce. On February 1, 1994, he filed a divorce complaint. From February 1, 1994, until the husband procured the wife's signature on his marriage settlement "agreement," on March 25, 1994, he harassed and intimidated her. He telephoned her at her place of work at least once a day. Her supervisor stated that he called "[n]umerous times, [and talked] for long periods of times." Two witnesses testified that the husband would show up at the wife's place of work "a minimum of one to two times per week." He was described as being angry and aggressive, to the point that her supervisor called security employees during one of his visits. Her supervisor described the wife as being "emotional, frightened, . . . [and] crying." The husband's harassment affected her emotionally to the point that she was counseled about her inability to perform her job during this period.
The testimony of the wife's supervisor was corroborated by a co-worker. Both described the husband's numerous phone calls, appearances at the wife's place of work, and his aggressive behavior and its effect on his wife.
His harassment and aggression were not limited to her place of employment. He also called her at home. On one occasion, he called late at night, waking their daughter and accusing her of harassing him. Then, the husband's daughter from a previous marriage called to warn the wife that the husband had left with a gun. His harassment did not end until the agreement was signed. The wife stated, "I signed it just so it would be over, so he — so all the phone calls I was getting in the middle of the night . . . and at work and all would be over. I was worried about losing my job and I thought that it would end."
" 'Duress' has been defined as subjecting a person to improper pressure which overcomes his will and coerces him to comply with the demands to which he would not yield if acting as a free agent, and is a ground on which to support a setting aside of a divorce decree and underlying agreement."Delchamps v. Delchamps, 449 So.2d 1249 (Ala.Civ.App. 1984). The record is replete with evidence to support a finding of duress. Uncontroverted testimony of the wife's co-employee and her supervisor aptly describe the effect the husband's continued harassment had on her. They described her as crying, and as being so emotional, that her job performance was affected. It is obvious that this unrelenting intimidation and harassment caused the wife to comply with her husband's demands. Therefore, we conclude that the trial court's judgment is plainly and palpably incorrect and should be reversed. *Page 119 
Additionally, a Rule 60(b) motion should be granted where the judgment was obtained through misrepresentation. "Misrepresentation" is defined as "any manifestation by words or other conduct by one person to another that, under the circumstances amounts to an assertion not in accordance with the facts. . . . That which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists." Black's Law Dictionary, 1001 (6th ed. 1990); see Simsv. Callahan, 269 Ala. 216, 112 So.2d 776 (1959); HealthAmericav. Menton, 551 So.2d 235 (Ala. 1989). The husband testified that on March 25, 1994, the day the marriage settlement "agreement" was signed and incorporated into the divorce judgment, he told his wife that "we are going to let some judge look at it and see if he would approve it or not." Mr. Fullan testified that during a meeting with the parties, he vehemently opposed the agreement and told them that he believed no judge would approve it. The wife testified that when she accompanied her husband to the courthouse, they were going there to have the judge give his opinion. She said she signed the agreement believing her signature was necessary for the judge to review the agreement.
Judge John C. Calhoun testified that he had been alerted by someone, probably someone from Judge Pate's office, that the Elliotts might come by for a "walk-through divorce." The record does not make it clear who notified Judge Pate, the trial judge to whom the divorce case had been assigned, that the Elliotts wanted to have a divorce judgment entered that day. But, the record is clear that Judge Calhoun was acting with the understanding that the parties were present for an uncontested divorce. Moreover, the wife was acting under the assumption that the court was reviewing the agreement. It appears that only the husband knew the procedure would end in a final judgment, not just a recommendation of approval.
"If the agreement was obtained through duress and fraud, then the divorce is void." Cary v. Cary, 257 Ala. 431, 59 So.2d 659
(1952). The evidence requires a finding that the divorce was obtained through misrepresentation amounting to fraud. The trial court's judgment denying relief on the basis of misrepresentation is an abuse of discretion.
A separation agreement incorporated in a divorce judgment must be fair, reasonable and just, and free from fraud, duress, or other coercion. Kunkel v. Kunkel, 547 So.2d 555
(Ala.Civ.App. 1989); Delchamps v. Delchamps, 449 So.2d 1249
(Ala.Civ.App. 1984). The agreement incorporated into the parties' final divorce judgment was far from fair, reasonable, and just. The parties were married for 14 years. The wife supported her family while the husband attended law school. The property division settlement provides her with no alimony, with one piece of real estate which is encumbered, and with the assets she brought into the marriage 14 years before.
Further, the agreement has a custody and support arrangement for the parties' minor children that is described as "unique." The husband testified that he had never seen an agreement providing for joint custody and support such as the one he drafted. The support arrangement clearly deviates from the child support guidelines of Rule 32, A.R.Jud.Admin. Also, he admitted that the agreement deviated from the judicially recommended format for shared custody arrangements. [R. 157.58] The agreement on its face appears manifestly unjust and possibly in contravention of the children's best interest. Rule 60(b) provides a basis from relief from a judgment that is wholly unjust. The record clearly requires a finding that the agreement and the resulting judgment are inequitable and should be set aside.
We note that the husband is a member of the bar. It is even more deplorable that he would use his superior knowledge of the law to harass and deceive his wife. His behavior compels this court to reverse the trial court's judgment denying Rule 60(b) relief.
The trial court abused its discretion in denying the wife's requested relief. Its judgment is reversed and the cause is remanded, for the trial court to enter a judgment granting the wife's requested Rule 60(b) relief.
The husband's request for an attorney fee is denied. *Page 120 
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.
YATES, J., concurs in the result.
CRAWLEY, J., dissents.