Michael D. Allen, the husband, appeals from a divorce judgment entered by the Shelby Circuit Court. He contends that the trial court erred by adopting the terms of an alleged settlement agreement between him and Sylvia Fierro Allen, the wife.
The parties married in 1983; they separated in August 2002. They had two adopted daughters, who were born in June 1988 and October 1993, respectively. In August 2002, the wife filed a complaint in the Shelby Circuit Court alleging that the parties were incompatible and that there had been an irretrievable breakdown of the parties' marriage. She requested that the trial court enter a judgment divorcing the parties, that it award her custody of the parties' children, that it award her child support and alimony, that it make an equitable division of the parties' property and debts, and that it award her attorney fees. The husband filed an answer generally denying the wife's allegations.
The case was set for trial on April 14, 2003. On the date of the trial, the parties attempted to settle the case through mediation. After the mediation attempt failed, the parties' attorneys attempted to negotiate a settlement before leaving the courthouse. The attorneys negotiated from a draft agreement that had been prepared by the wife's attorney, with the husband's attorney making several handwritten changes on the agreement, most of which were initialed by the husband. At some point during the negotiations, the agreement was signed by both parties, though notary sections were not completed and the document was not dated.
On April 17, 2003, the executed agreement was filed with the trial court, apparently by the wife's attorney. However, the husband contends that the filed agreement was a "memorandum agreement" and that it was not intended to be the "final agreement" between the parties. In part, the agreement states:
"AGREEMENT
 "This Agreement [is] made and entered into by and between [the wife] . . . and [the husband].
". . . .
 "WHEREAS, the parties consider it to be in their best interests to settle between them their respective rights as to property rights, . . . support and maintenance, and all other rights of property otherwise growing either out of the marriage relationship existing between them, and which either of them has or may hereafter have or claim to have to any property of every kind, nature and description, real, personal or mixed, now owned by either of them.
 "NOW, THEREFORE, in consideration of the mutual covenants and other good and valuable consideration herein expressed, the parties hereto agree as follows:
"INCORPORATION INTO DECREE
 "1. This Agreement shall become effective upon the date of the execution hereof without reference to the date of the Court's Decree, unless otherwise specifically stated herein. That in the event a Final Judgment of Divorce is entered in this cause, then it is agreed that this Agreement shall be incorporated in said decree by reference thereto, subject to the approval of the Court; and it shall be binding and conclusive on the parties.
". . . .
"ACKNOWLEDGMENT OF CONTENTS OF AGREEMENT
 "30. The parties do hereby affirmatively acknowledge and agree that the consideration and agreements by and between the parties on which this *Page 838 
Agreement is based are set forth in full in this Agreement and any agreement outside this Agreement is null and void.
 "Each party hereby acknowledges that each is executing this Agreement of his or her own free will and volition and acknowledges that no coercion, force, pressure or undue influence has been used against either party in the execution of this Agreement, either by the other party hereto or by any other person or persons. The parties hereto further approve and ratify the provisions of this Agreement and believe its terms to be fair, just and adequate and voluntarily accepts its terms and conditions.
"INDEPENDENT COUNSEL
 "31. Both parties acknowledge that they have been given the opportunity to consult with independent legal counsel of their choice concerning the terms of this agreement, have read the foregoing agreement, understand the terms thereof, and have executed the same voluntarily."
After the agreement was filed with the trial court, the wife's attorney apparently forwarded a "final agreement" incorporating the handwritten terms from the "memorandum agreement" to the husband's attorney, along with a draft of a divorce judgment.[1] On April 29, 2003, the husband's attorney sent a letter to the wife's attorney that stated:
 "I went over the agreement which I received from your office with [the husband]. I spoke with Robin yesterday about proposed changes in the agreement which do not alter the spirit of the agreement, rather, the majority of the items are clarifications as to my client's rights. The only two items that have changed, one of which was not addressed at all, are characterizing the alimony as periodic, rather than alimony in gross, and the tax exemptions for the children.
 "I am in receipt of your message, and even if the agreement changes somewhat from the memorandum, all I have ever had to do was get the parties to sign the order. The changes I discussed with Robin do not alter the spirit of the agreement. My client will not agree with the final draft as written and has instructed me to file a motion to set the memorandum agreement aside and proceed to trial if we cannot make these changes. I hope we do not have to do this."
Thereafter, the husband filed a motion to set aside the agreement filed with the trial court, alleging the following grounds:
 "1. The [husband] did not understand certain aspects of the agreement and the memorandum agreement does not reflect the agreement as the [husband] understood it.
 "2. There are certain issues which were not discussed and thus not reflected in the memorandum agreement.
 "3. That the memorandum agreement was misunderstood in part by the [husband] when his signature was affixed."
In support of his motion, the husband submitted an affidavit that stated, in part:
 "On April 14, 2003, I was in court on this divorce case. At that time we were attempting to negotiate a settlement of the matter and we went over several issues with mediators and with my own attorney. After several hours, my attorney and I discussed a memorandum agreement which I did review and sign. Upon review of the proposed agreement which was to be made from the memorandum, I realized that there were several *Page 839 
items that I did not understand at the time of signing the agreement, and there were some important issues that were not discussed at all.
 "My mother recently passed away and my father has several health issues which I am trying to deal with, along with the break-up of my family. I did not understand the memorandum agreement when it was presented to me and I am asking that it be set aside and the case placed back on the trial docket."
Upon receipt of the husband's motion to set aside the agreement and his affidavit, the trial court placed the case on its mediation docket and reset the trial date.
On May 21, 2003, the wife filed a motion to enforce the parties' agreement. The wife alleged that she and the husband had entered into "a memorandum agreement at court on April 14, 2003, settling this matter in its entirety." She also alleged that the husband was represented by counsel during the settlement negotiations and that he was under no duress when he signed the agreement. The trial court entered an order stating that the wife's motion to enforce the settlement agreement would "be heard on June 27, 2003, at time of the Mediation."
A few days before the scheduled mediation, the husband's attorney filed a motion to withdraw as counsel and the husband retained new legal counsel. The husband also filed a "Counter-Compliant for Divorce," requesting that the trial court enter a judgment divorcing the parties on the ground of incompatibility, that it award him custody of the parties' children, that it award him child support, that it equitably divide the parties' property and debts, and that it award him attorney fees.
The trial court entered an order granting the husband's attorney's motion to withdraw as counsel and an order continuing the mediation and the hearing on the wife's motion to enforce the agreement. After the entry of the trial court's order, the husband filed a response to the wife's motion to enforce the settlement agreement. In his response, the husband denied that he "signed any document entitled `Memorandum Agreement,'" and he denied that he "authorized the submission of any document settling this divorce action in its entirety." According to the husband, he was "under the belief that he would have an opportunity to review a final proposed Agreement before any negotiations or agreements on any issue would be transformed into a Final Judgment of Divorce."
In August and September 2003, the trial court held an ore tenus hearing regarding all pending matters. In October 2003, it entered an order denying the husband's motion to set aside the parties' agreement and an order granting the wife's motion to enforce the parties' agreement. The trial court also entered a divorce judgment, which included the terms of the agreement executed by the parties almost verbatim, including the handwritten changes that are reflected on the agreement.[2]
The judgment stated that custody of the children would be "shared," with the wife being the "primary custodian." In accordance with the Rule 32, Ala. R. Jud. Admin., Child Support Guidelines, and based on the husband's gross monthly income of $6,626 and the wife's gross monthly income of $1,614, the husband was required to pay the wife $1,368 per month as child support. The wife received the marital residence in Montevallo. The husband received 214 acres of real property and the "Rocking A Arena" located in Chilton County, along with all farm equipment. The husband *Page 840 
also received several family businesses. Like the other property awards, the parties' personal property was divided as described in their agreement. The wife was awarded $500 per month as periodic alimony, and she was awarded alimony in gross to be paid in installments of $700 per month for 15 years.
The husband appeals. He contends that the trial court erred by concluding that the parties had entered into an enforceable agreement because, he says, there was no "meeting of the minds." The husband also contends that the trial court erred by concluding that the husband had authorized his attorney to file the agreement with the trial court and that the trial court should have set the agreement aside on the grounds of duress or inequity.
"When evidence is presented ore tenus in a divorce case, the judgment of the trial court is presumed to be correct and will not be set aside on appeal absent plain and palpable error" or absent a showing of an abuse of discretion. Mayer v. Mayer,628 So.2d 744, 745 (Ala.Civ.App. 1993).
 "An agreement reached in settlement of litigation is as binding on the parties as any other contract. . . . Moreover, there is a strong policy of law favoring compromises and settlements of litigation, especially in suits involving families, since the honor and peace of the family is often at stake."
Porter v. Porter, 441 So.2d 921, 923 (Ala.Civ.App. 1983). However, in the context of a divorce judgment, our courts have held that the trial court is not bound by the parties' agreement but may accept the agreement or reject the agreement, in whole or in part. See, e.g., Porter, 441 So.2d at 924; see also Mullinsv. Mullins, 770 So.2d 624 (Ala.Civ.App. 2000); Kohn v. Kohn,52 Ala.App. 636, 296 So.2d 725 (Civ.App. 1974).
The husband contends that the parties had not entered into an enforceable agreement because, he says, there was no "meeting of the minds." "It is well settled that whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions." SGB Constr.Servs., Inc. v. Ray Sumlin Constr. Co., 644 So.2d 892, 895 (Ala. 1994). In regard to the phrase "meeting of the minds," our Supreme Court stated in Lilley v. Gonzales, 417 So.2d 161 (Ala. 1982):
 "Gonzales's argument is premised upon a misconception of the time-honored phrase `meeting of the minds.' It is true that there is no contract unless the parties assent to the same thing and in the same sense. But if one seeks to convey his meaning by expressions importing something different, or attaches to the proposition of the other a significance not authorized, whatever injury may result from the misunderstanding must be visited upon him. Thompson v. Ray, 46 Ala. 224 (1871). Stated another way, the law of contracts is premised upon an objective rather than a subjective manifestation of intent approach.
 "Professor Corbin, in his treatise on contract law, speaks to the issue of mutual assent as follows:
 "`Agreement consists of mutual expressions; it does not consist of harmonious intentions or states of mind. . . . At present, however, what we observe for judicial purposes is the conduct of the parties. We observe this conduct and we describe it as the expression of a state of mind. It is by the conduct of two parties, by their bodily manifestations, that we must determine the existence of what is called agreement. That is what is meant by the anciently honored term "meeting of the minds." That is what is meant by mutual assent. *Page 841 
 "`[One] may be "bound" by a contract in ways that he did not intend, foresee, or understand. The juristic effect (the resulting legal relations) of a man's expressions in word or act may be very different from what he supposed it would be. . . . [B]ut it is of much greater importance to realize that the courts must determine the requirements of justice and that the legal effects thus given to expressions of agreement are seldom exactly what one or both of the agreeing parties supposed or expected.' A. Corbin, Corbin on Contracts § 9 (1952).
". . . .
 "Where a contract is unambiguous and plain in expression, we know of no canon of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left."
Lilley, 417 So.2d at 163.
Despite the husband's protestations that he did not understand the executed agreement and that the executed agreement did not represent what he thought he was agreeing to, the fact remains that he executed the agreement. "`The purpose of a signature on a contract is to show mutual assent.'" Bowen v. Security PestControl, Inc., 879 So.2d 1139, 1142 (Ala. 2003) (quoting Exparte Rush, 730 So.2d 1175, 1177-78 (Ala. 1999)). "[O]rdinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby." Power Equip. Co. v. First Alabama Bank,585 So.2d 1291, 1296 (Ala. 1991); see also Gunnels v. Jimmerson,331 So.2d 247, 250 (Ala. 1976) ("The general rule of contract law is that when the parties reduce their agreements to writing, the writing is the sole expositor of the transaction and the intention of the parties, in the absence of mistake or fraud or ambiguity.").
Also, the executed agreement appears complete in and of itself and free of ambiguity. See H.R.H. Metals, Inc. v. Miller,833 So.2d 18, 24 (Ala. 2002) ("It is only where a contract provision is found to be ambiguous that it may become necessary to consider the surrounding circumstances and the construction the parties gave the language in order to determine the intent of the contracting parties. . . . The question whether a contract is ambiguous is a legal question for the trial court."). Although the husband contends, despite the terms contained in the agreement itself, that what he calls the "memorandum agreement" was not intended to be the parties' "final agreement," the wife testified that the "memorandum agreement" was simply intended to be retyped as the "final agreement" to reflect the handwritten changes that had been made by the husband. The wife's testimony is supported, to some degree, by the testimony of the husband's former attorney. The retyped agreement, which the husband refused to execute, does not appear in the record. However, there is no evidence that it differed in any substantial way from the agreement executed by the parties or that the parties intended to continue negotiations after they executed the "memorandum agreement." Compare Tidwell v. Tidwell, 505 So.2d 1236
(Ala.Civ.App. 1987) (affirming the trial court's entry of a judgment incorporating the terms of an unwritten settlement agreement where the trial court had been informed by the attorneys that an oral settlement had been reached and one of the parties subsequently attempted to set aside the agreement based on the discovery of additional assets); with *Page 842 Morrison v. Morrison, 837 So.2d 840, 842 (Ala.Civ.App. 2001) ("Based on . . . subsequent drafts [including changes made by the party who had initially prepared the parties' August 4 settlement agreements] . . . and the discovery and negotiations that continued during the pendency of the case, this court concludes that the August 4 settlement agreements were not intended to constitute a final settlement regarding all terms of the divorce."). Further, the wife testified that the husband began performing some of his obligations that are contained in the "memorandum agreement" within days after it was executed and before he attempted to repudiate the agreement. Specifically, the wife testified that the husband began cleaning out the barn, as required under paragraph 12 of the agreement, something which she had been attempting to get the husband to do for a long time without success. The husband's partial performance is inconsistent with his alleged understanding that the "memorandum agreement" did not represent the terms of the parties' "final agreement."
Based on the evidence of the objective manifestations of intent presented to the trial court, and particularly the language of the executed agreement, we cannot conclude that the trial court's determination that the executed agreement was an enforceable contract, as between the parties, was in error.
The husband next contends that he did not authorize his former attorney to file the executed agreement with the trial court and that the executed agreement was provided to the trial court without his consent based on an "`accident, surprise, or some ground of this nature'" that would justify setting aside the agreement, citing Brocato v. Brocato, 332 So.2d 722, 724 (Ala. 1976) (quoting Ex parte Hayes, 92 Ala. 120, 122, 9 So. 156, 156
(1891)). As to whether the husband authorized his attorney to submit the executed agreement to the trial court, the husband directs us to Ala. Code 1975, § 34-3-21, and cases relying thereon. Section 34-3-21 states that "[a]n attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court." The husband argues that, as a matter of fact, he did not authorize his former attorney to file the parties' agreement with the trial court and that he had informed his attorney that he "wanted to review the final version of it before he agreed to anything." Thus, he contends, any filing of the agreement must have been the result of "accident, surprise, or some other ground of this nature" that was not contemplated by the parties.
In effect, the husband is arguing that the trial court erred by not believing his testimony and that of his attorney regarding whether the agreement was considered final, as far as the husband was concerned, and whether it could be submitted to the trial court. That argument is addressed by our discussion above of the husband's objective manifestation of assent to the agreement.
Paragraph 1 of the executed agreement clearly indicates that the agreement would be filed with the trial court and incorporated into any divorce judgment. We also note that in the husband's motion to set aside the executed agreement, he made no mention of his attorney's alleged lack of authority to submit the agreement to the trial court. Instead, he alleged that he did not understand the agreement when he signed it. Although the parties may have originally intended to submit a retyped version of the agreement incorporating the husband's handwritten changes to the trial court, the fact that the husband later refused to execute the retyped version does not change the fact that he objectively *Page 843 
manifested his assent to the terms reflected in the executed agreement that was submitted to the trial court and on which the trial court based its judgment.
The husband next contends that the trial court should not have enforced the parties' agreement because, he says, he was under duress when he executed the agreement and because, he says, the terms of the agreement are inequitable.
 "`Duress' has been defined as subjecting a person to improper pressure which overcomes his will and coerces him to comply with demands to which he would not yield if acting as a free agent, and is a ground on which to support a setting aside of a divorce decree and underlying agreement. . . . The party seeking to set aside an agreement on grounds of duress must prove by clear and convincing evidence that the duress existed at the time of execution."
Delchamps v. Delchamps, 449 So.2d 1249, 1250 (Ala.Civ.App. 1984). Based on the husband's testimony, it appears that he was under stress when he executed the agreement; according to his former attorney, the husband "appeared beat down." However, it also appears that the husband, with the assistance of counsel, negotiated significant changes to the draft agreement before he executed the agreement. Further, the husband admitted that immediately after the settlement-agreement negotiations concluded he had the presence of mind to contact his business partner to confirm that everything was okay at work in the husband's absence.
We have carefully reviewed the record. It does not appear that the "stress" that the husband may have been experiencing was sufficient to "overcome his will and coerce him to comply with demands to which he would not yield if acting as a free agent." More importantly, it does not appear that there was any subjection of the husband to "improper pressure." The only person who met with the husband regarding the agreement was his attorney, and there was no evidence that the wife exerted any improper influence on the husband. See Kunkel v. Kunkel,547 So.2d 555 (Ala.Civ.App. 1989) (reversing the trial court's determination that a settlement agreement was the result of duress because the determination was not supported by clear and convincing evidence). Compare Delchamps, 449 So.2d at 1252
(evidence that wife had physically threatened the husband with a gun); Elliott v. Elliott, 667 So.2d 116, 118 (Ala.Civ.App. 1995) ("unrelenting intimidation and harassment" by the husband). In light of the ore tenus rule, and the degree of proof required of the husband on the issue of duress, we cannot conclude that the trial court erred when it failed to conclude that the husband was under duress when he executed the parties' agreement.
As to whether the executed agreement was inequitable, "Alabama law is clear that a settlement agreement which is given effect by a divorce decree must be fair, reasonable, and just." Tidwell,505 So.2d at 1238. The husband contends that the parties' agreement is inequitable because, he says, it is "financially unfeasible and very favorable to the wife." In support of his argument, the husband cites Kohn v. Kohn, 52 Ala.App. 636,296 So.2d 725 (Civ.App. 1974). In Kohn, this court stated:
 "Here, when two parties have been married over twenty years, worked side by side acquiring a sizeable estate, then agree to a divorce with a property agreement wherein the wife gets virtually everything and, thereafter, within eighteen days after the documents are filed with the court but before they are acted upon by the court, the husband moves to withdraw or strike the documents, it is error for the trial court to *Page 844 
refuse to do so and find the agreement valid and binding. Our reason for so holding is based upon the inequity of the agreement, itself."
52 Ala.App. at 640, 296 So.2d at 729.
Unlike Kohn, the record in the present case does not contain sufficient evidence for this court to conclude that the executed agreement is inequitable. The record contains no evidence that the husband cannot afford to make the payments for which specific dollar amounts are provided in the agreement; some of the provisions in the agreement, such as the requirement that the husband maintain health insurance for the wife for 18 months, that he pay one-half of the children's health insurance, and that he purchase a PACT account for the parties' youngest child, do not even contain specific dollar amounts. Nor does the record contain evidence that would allow us to conclude that the property division was inequitable; no values were provided for any of the parties' assets. Further, the husband offered no evidence regarding how his obligations under the agreement might financially impact him. In fact, the husband never pleaded that the terms of the agreement created any financial hardship for him. The only discussion at trial regarding whether the husband had the ability to comply with his financial obligations under the agreement was a question that the husband directed to the wife, after the husband had testified, regarding whether she knew if the husband could comply with his financial obligations under the agreement. The wife's attorney objected to the question on the grounds of relevance, and her objection was sustained. The husband made no proffer as to what the wife's answer might have been, and he made no attempt to "recall" the husband to testify regarding the financial-hardship issue.
Based on the terms of the parties' agreement, which the husband negotiated in his favor and executed, and the lack of evidence regarding any inequity that might result from the adoption of the agreement by the trial court, we cannot conclude that the trial court erred when it determined that the parties' agreement should be incorporated into the divorce judgment verbatim. See Tidwell,supra.
The wife's request for the award of an attorney fee on appeal is denied.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] The only agreement contained in the record is the "memorandum agreement," which was the document on which the trial court based its judgment.
[2] Almost all of the handwritten changes were initialed by the husband. The few handwritten changes that were not initialed by the husband were in the husband's favor.