THOMAS, Judge.
Charles “Sim” Crawford Byrd (“the former husband”) appeals from orders of the Montgomery Circuit Court denying his requests for relief, under Rule 60(b)(1) and (6), Ala. R. Civ. P., from an October 30, 2014, judgment entered by the circuit court, denying his petition to modify his periodic-alimony obligation to Frances B. Byrd (“the former wife”), and finding him in contempt of the judgment entered by the circuit court on October 30, 2014. We affirm.

Background

In October 2000, the circuit court entered a divorce judgment that incorporated an agreement reached by the parties. The record indicates that, among other things, the circuit court’s divorce judgment ordered the former husband to pay $6,000 per month in periodic alimony and to pay 35% of his “net annual bonus” to the former wife. In May 2014, the former husband petitioned the circuit court to modify his periodic-alimony obligation, and the former wife counterclaimed, alleging that he was in contempt for failing to comply with the divorce judgment.
In his petition, the former husband alleged, among other things, that a material change in circumstances had occurred and that he was no longer financially able to pay his periodic alimony as ordered. Specifically, he alleged that he had reached 68 years of age, that he had been remarried “for many years,” and that his current wife was suffering from an aggressive form of cancer that required chemotherapy treatment. He also alleged that he had been “forced” to retire in December 2013, that he had been working as a “consultant” for his former employer since that time, that his compensation had been reduced by 60%, and that he would be unemployed beginning January 1, 2015.
On October 30, 2014, the circuit court entered a judgment that incorporated an agreement that the parties had reached through mediation.[1] Among other things, the former husband agreed to pay $350,000 to the former wife to settle his periodic-alimony arrearage. The mediated agreement indicated that that amount at *888 least partially represented the former husband’s failure to pay 35% of his annual bonuses to the former wife as ordered by the divorce judgment.
The former husband agreed to pay the $350,000 as follows: $90,000 within 14 days of the execution of the mediated agreement; [2] $30,000 on or before January 30, 2015; $130,000 on or before January 30, 2016; and $83,000 on or before January 30, 2017. The parties agreed that the former husband would pay the remaining $17,000 from a “MetLife account” within 14 days of the execution of the mediated agreement.
The former husband agreed to pay to the former wife periodic alimony in the amount of $4,823 per month beginning on October 1, 2014;[3] $4,000 per month beginning on February 1, 2016, provided he timely made his $130,000 alimony-arrear-age payment due on January 30, 2016; and $3,500 per month beginning on February
1. 2017, provided he timely made his $83,000 alimony-arrearage payment due on January 30, 2017. In the event that the former husband paid the agreed-upon ar-rearage amount in full before the deadlines prescribed above, the parties agreed that his monthly alimony obligation would then be reduced to $3,500.
On January 14, 2015, the former husband petitioned the circuit court to modify its October 30, 2014, judgment. As grounds for the requested modification, the former husband alleged, among other things:
“5. That[,] due to material changed conditions that existed both prior to the filing of the May 13, 2014, Petition to Modify and subsequent to the October 30, 2014, order, the former husband does not have the ability to pay the alimony or other obligations [and t]hat the alimony and other obligations required of the former husband are excessive and place too heavy a burden on the former husband. The former husband is now retired, is 69 years old, and at this time only has Social Security income. The former husband is seeking ways for additional income but as of the filing of this petition/motion has no guarantee of same. The former husband is having to borrow money to pay the alimony and obligations but cannot continue to do so, and cannot continue to pay the alimony and other obligations.
[[Image here]]
“6. In the alternative, the former husband seeks relief from the mediated agreement that was incorporated into an Order by this Honorable Court on October 30, 2014. The former husband seeks this relief pursuant to Rule 60(b)(1), A[la]. R. Civ. P., for mistake, inadvertence or excusable neglect and/or Rule 60(b)(6), A[la]. R. Civ. P., for any other reason justifying relief from the operation of the judgment.
“7. When the former husband signed the mediated agreement he was under mental and economic distress and duress. The former husband signed the agreement under the mistaken impression that he could comply with the terms when in fact it was an impossibility for him to comply. The terms of the mediated agreement result in an extreme hardship to the former husband and places him in an impossible position to comply. The mediated agreement is unjust and unconscionable.”
*889 The former wife answered the former husband’s petition and counterclaimed, asking the circuit court to find him in contempt for failing to comply with its October 30, 2014, judgment. The former ■wife later filed an amended counterclaim, detailing the specific amounts that the former husband had allegedly failed to pay, and the former husband later answered the former wife’s counterclaim and amended counterclaim, denying the allegations made therein and asserting as an affirmative defense the allegations made in his modification petition.
After discovery, and upon a “Joint Motion to Bifurcate,”[4] the circuit court continued its hearing on the former husband’s modification petition pending a hearing on, and disposition of, the Rule 60(b) request for relief that he had sought in the alternative. In July 2015, the former wife filed a second amended counterclaim for contempt, alleging, among other things, that she had been unable to afford sufficient food or pay certain medical expenses as a result of the former husband’s failure to pay his periodic alimony. She also provided an updated calculation of the monthly amounts that the former husband had allegedly failed to pay.
On July 19, 2015, the former husband answered the former wife’s second amended counterclaim, alleging in pertinent part:
“4.... In further defense[,] the former [hjusband states that he has paid for the former [wjife since January 15, 2015[,j through the date of this Answer: (1) the house note for the former [wjife for January thr[oughj July in the approximate amount of $6,739.95; the car payment for the former [wjife from January thr[ough] July in the approximate amount of $2,618.00; (3) the MetLife Insurance premium for the former [wjife from January thr[ough] July in the approximate amount of $3,129.00; all for an approximate total of $12,483.95. .
“In addition thereto, the former [hjus-band paid to the former [wjife (1) in October 2014, the amount of $82,000 (for which the former [hjusband had to obtain $17,000 from a cash out in his retirement), (2) in October 2014, for the former [wjife’s attorney fee the amount of $25,000, and (3) in January 2015, $30,000 (for which the former [hjusband had to borrow the money).
“In summary, the former [hjusband has paid for the former [wjife within the last 10 months about $154,483.95....”
As an “affirmative defense,” the former husband alleged that he was not in contempt of the circuit court’s October 30, 2014, judgment because he had not willfully refused to pay the former wife the additional amounts owed but had, instead, been financially unable to do so.
On July 20, 2015, the circuit court conducted a hearing on the Rule 60(b) request for relief asserted by the former husband. Only the former husband testified at the Rule 60(b) hearing. During the hearing, the former husband testified that he was 70 years old and that he had been remarried for approximately 16 years. He testified that, when he had entered into the mediated agreement in October 2014, he had been employed by Republic National Distributing Company (“Republic”), an alcoholic-beverage distributorship. He had worked in that industry for approximately 48 years. He had been a regional .president at Republic but had begun working as a consultant in 2014. He testified that his *890 employment with Republic had ended in December 2014.
- -At the time of his retirement in 2014, his annual salary had been $150,000. He testified that, in the four or five years preceding 2014, his annual salary had been $225,000. He also testified that he had received bonuses from Republic in some years since the .entry of the divorce judgment and that the largest bonus he had received was $80,000. He testified that he had failed to pay 35% of his annual bonuses to the former wife, as required by the divorce judgment, in at leást some of years since they had been divorced.
The former husband testified that, since his retirement, he had sought employment with several other companies and had entered into an agreement with Brown-Forman Distilling Company (“Brown-Forman”) in February 2015 to provide consultation services as an independent contractor. The former husband testified that, under the terms of his agreement with Brown-Forman, he would receive $27,500 for six months of his services and would be reimbursed by Brown-Forman for business-related expenses.
Regarding the relief that he had requested under Rule 60(b)(1) and (6), the former husband provided the following pertinent testimony upon examination by his attorney:
“Q: ... [0]ne of the grounds you allege was that you were under mental or economic stress or duress at the time you signed [the mediated agreement]? “A: Yes, sir, that’s correct.
“Q: Would you tell the judge what you mean by that?
“A: Well, after I read the agreement, it was just so shocking that I just—I was overwhelmed. I was—total duress. I was sweating. I was totally confused. I didn’t—I didn’t know what to do. And I knew what I had read. But on the other
hand, I was kind of like ‘This can’t be the facts. It’s just’—
“Q: Why did you feel that way?
“A: Well, because when I looked at this, this was, in my opinion, just totally absurd. I mean, you know, if I don’t have that kind of money, I have no way of getting it. You know, I don’t have it. I’m broke.
[[Image here]]
“Q: ... Then all of the parties and lawyers in the case kn[e]w that your employment was going to end in December of 2014?
“A: Yes, sir.
“Q: Okay. And you still signed the agreement?
“A: Yes, sir.
[[Image here]]
“Q: Where were you going to get the money to comply with that agreement?
[[Image here]]
“A: Well, kind of—I had some of it. That’s what I had left. And I had to borrow some.
[[Image here]]
“Q: So why did you sign the it?
“A: I signed it because [my attorney] strongly recommended that I accept this. Because if I didn’t—And part of the problem with the whole thing is just—I was put on the spot. I didn’t have any time. It was either sign it now or the deal was off the table. She said, T recommend, strongly recommend you sign this agreement, and then if we see down the road you can’t make it work’— I said, ‘I’ve told you numerous times, “I don’t have it. I don’t have the money. When I give them this, I’m broke.’” I guess I was so confused, I didn’t know what else to do.
“Q: Were you—You’re not saying your lawyer held a gun and forced you to sign it?
“A: Oh, no, sir. Absolutely not.
[[Image here]]
*891 “Q: Now, you also put in your Complaint—correct me if I’m wrong—you said you were under the mistaken impression you could comply with this agreement, when in fact under the terms of the agreement, it was impossible for you to comply. What do you mean by that?
“A: Well, what I meant by that was that I would comply with what part I had assets to do. And then the rest, there wasn’t a clue. You know, sir if— Your Honor, if I might say, you know, I’ll be 70 years old. I was 69 then, I’m 69 now.
[[Image here]]
“Q: Now, you also said in your motion that the terms of the mediated agreement results in extreme hardship and was impossible to comply with. What do you mean by that?
“A: You know, as far as complying, I don’t have the resources to comply. I mean, it’s plain and simple. I don’t have them. And I don’t know how to go about getting them. There’s nobody advertising any job for a man my age to make the kind of money that you’d have to make to be able to do this.
“Q: Have you sought out jobs?
“A: Yes, sir.
[[Image here]]
“Q: Were you able to get employment with any of these people?
“A: Yes, sir.
[[Image here]]
“Q: ... [Y]ou also said in your petition to modify under Rule 60 that it was— the agreement was unjust and unconscionable. What do you mean by that? “A: I mean, even the penalties, you know, it’s almost like somebody is in some kind of loan business; charging 7 and a half percent interest; $2,000-pen-alty, and knowing I hadn’t got it. I hadn’t got the principal much less the penalty.
[[Image here]]
“Q: ... [A]re there any other reasons as to you believe the mediated agreement should be set aside?
“A: It’s just totally absurd in the sense of what’s being asked here. And, you know, I guess we can all ask, but what can you get? That’s—There is something else. And, you know, it’s put me under terrible duress, and, you know, not knowing from one day to another what’s going to happen. And even to the point of being threatened to go to jail. And, you know, I’ve been a pretty good citizen. I don’t think I’ve been a criminal to go to jail. And, I mean, this is something that a man that’s got plenty of wherewithal can do. I can’t do this, sir.”
He also testified that he had been under additional stress when the mediated agreement was executed because of his current wife’s cancer diagnosis, his own medical conditions, and the financial burden caused by their treatments. He stated that he had also been afraid of becoming homeless because he feared that he would be unable to make the mortgage payments on their house.
Upon cross-examination by the former wife’s attorney, the former husband, among other things, was asked about various assets and sources of income. He testified that he and his current wife jointly owned a house in Montgomery, that they jointly owned a condominium-rental business that operated in Gulf Shores,[5] and *892 that his current wife owned a house in Snowdoun.
He further testified that his gross income in 2014 was approximately $240,000. He testified that his monthly net income at the time of the Rule 60(b) hearing, including the compensation that he received from Brown-Forman and his Social Security income, was approximately $6,040 or $6,080.[6] He stated that his current wife’s monthly Social Security income was approximately $1,700 and that he paid most, if not all, of them joint expenses from his monthly income.
The former wife also entered into evidence monthly bank statements for three accounts to which the former husband had access. The bank statements consistently reflected a combined balance in excess of $20,000 for January through June 2015. The former husband testified that one of the accounts in question was used for the condominium-rental business that he and his current wife jointly owned and that it was not a personal account.
The former husband’s April 22, 2015, deposition was also admitted into evidence, and-the following exchange between the former husband and the former wife’s attorney was read into the record:
“Q: At the time you signed the [mediated agreement,] did you intend to comply with all of the terms in [it]?
“A: I intended to comply with what I could.
“Q: My question was, did you intend to comply with all of them?
“A: No, because I couldn’t comply with it. I didn’t have the funds.”
On July 20, 2015, the circuit court entered an order denying the Rule 60(b)(1) and (6) relief requested by the former husband and stating: “[T]he Court does not find any mistake, inadvertence, excusable neglect or any other reason which would justify relieving the [fjormer [h]us-band from the Mediation agreement and Order adopting the same.”
On September 22, 2015, the circuit court held its hearing on the former husband’s modification petition and the former wife’s counterclaim for contempt. The former husband, the former wife, and one of the parties’ sons testified at the hearing. In its opening remarks, the circuit court stated orally: “On July 20, 2015, the Court heard this matter on a Rule 60 motion.... So those exhibits are part of this record for reference of the parties in this hearing.” Evidence was presented at the hearing indicating that the former wife’s monthly expenses were $6,327 and that she received $1,110 each month in Social Security benefits. She testified that she had no means of supporting herself and that she did not have access to any other assets or any other sources of income.
At the conclusion of the hearing, the circuit court entered an order finding the former husband in contempt and denying his modification petition. The circuit court’s September 22, 2015, order states, in pertinent part:
“Upon consideration of the testimony and exhibits ore tenus, it is hereby ordered as follows:
“1. That the [fjormer [h]usband is found to be in willful contempt for failure to pay monthly alimony as ordered. The Court specifically notes that the [fjormer [h]usband has not paid any alimony ‘directly’ *893 to the [fjormer [w]ife as ordered since January 2015, and he only made a partial payment of alimony in January 2015. The [fjormer wife has suffered financially, physically, and emotionally as a result of the [flormer [hjusband’s failure to pay alimony as ordered. The Court notes that it was only seventy-five days prior to the [fjormer [hjus-band requesting the said modificar tion that he entered into a mediated and negotiated agreement to pay the [fjormer [wjife the sum of $4,823.00 per month in periodic alimony (with a credit being given for payments of the [fjormer [wjife’s mortgage and car payment). The circumstances that he relies on for the requested modification were known to him at the time he entered into the sworn negotiated agreement adopted by the order of this court. As it relates to the circumstances known by the [fjor-mer [hjusband at the time he entered into the said negotiated agreement and the current circumstances, nothing has changed that was not expected to change, and which was considered as a part of the negotiated agreement to which the [fjormer [wjife relied upon. The [fjormer [hjusband still has the ability to work and earn income, perhaps even at the same level as his previous employment, he currently just works three days a week and has the ability to work more days, he has thousands of dollars in the bank (on average he had in excess of $20,000 in the bank each month, except for the month of August 2015 when the balance was a little over $18,000), and he has assets in the form of real property that has substantial equity. Additionally, the [fjormer [hjusband’s current [wjife has income which can contribute approximately $2,500.00 per month to the expenses he claims. The [fjormer [hjusband essentially admitted that at the time he signed the agreement, he had no intention of abiding by its terms. The Court also notes that the [fjor-mer [hjusband appears to have a pattern of not abiding by agreements and orders that have been entered relative to the divorce; and his lack of compliance have worked a hardship upon the [fjormer [wjife.
“2. That the [fjormer [hjusband has shown no change in circumstances, at least none that he was not already aware of at the time of the agreement, that would justify a modification of the periodic alimony he agreed to and which the Court ordered. Further, and based on the court’s observation, the [fjor-mer [hjusband has not been equitable to the [fjormer [wjife; he entered into an agreement and worked a substantial hardship upon the [fjormer [wjife, all while having a plan to not at all abide by the agreement he swore to uphold. The Court will not do equity for a party who himself has failed to do equity. The requested modification by the [fjormer [hjusband is hereby denied.”
The circuit court also found that the former husband had amassed a new periodic-alimony arrearage in the amount of $30,-223[7] and ordered him to pay $15,000 toward that arrearage within five business days to purge himself of contempt. The former husband complied with the contempt order and filed his notice of appeal on November 3,2015.
*894 On appeal, the former husband argues: (1) that the circuit court erroneously denied the Rule 60(b) relief that he requested, (2) that the circuit court erroneously denied his modification petition, and (3) that the circuit court erroneously found him in contempt.

Analysis

I. Rule 60(b) Relief
The former husband argues that the circuit court abused its discretion when it denied the Rule 60(b) relief that he had requested. Specifically, he contends that the circuit court erred in failing to find that he was under duress when he entered into the mediated agreement or, alternatively, in failing to find that the terms of the mediated agreement were unfair or inequitable and that he should be relieved from the circuit court’s October 30, 2014, judgment for one or both of those reasons.
The former wife responds in two parts. First, she argues that the circuit court’s July 20,2015, order denying the Rule 60(b) relief requested by the former husband was a final judgment and that his notice of appeal was therefore untimely with regard to that order. Second, she argues that, even if the former husband’s notice of appeal was timely, sufficient evidence was presented to support the circuit court’s denial of the Rule 60(b) relief requested by the former husband.
The former husband filed his notice of appeal on November 3, 2015. Therefore, if the circuit court’s July 20, 2015, order was a final judgment, the former husband’s notice of appeal with regard to that order was untimely under Rule 4(a)(1), Ala. R. Civ. P. “[A]n untimely filed notice of appeal results in a lack of appellate jurisdiction, which cannot be waived.” Parker v. Parker, 946 So.2d 480, 485 (Ala.Civ.App.2006). Therefore, we must determine whether the former husband’s appeal, which undisputedly is timely with regard to the circuit court’s September 22, 2015, order properly seeks appellate review as to the July 20, 2015, order. We conclude that it does.
We acknowledge that “a denial of a postjudgment motion filed pursuant to Rule 60(b) ‘is, under Alabama law, itself a final judgment that will independently support an appeal.’ Food World v. Carey, 980 So.2d 404, 406 (Ala.Civ.App.2007).” J.B.M. v. J.C.M., 142 So.3d 676, 681 (Ala. Civ.App.2013). We also acknowledge that the parties and the circuit court repeatedly refer to the Rule 60(b) relief that the former husband requested as a “Rule 60(b) motion” throughout the record and that the former husband even continues this trend in his appellate brief. Furthermore, the transcript of the Rule 60(b) hearing seems to indicate that the circuit court may have considered the request to be part of the “.01” case in which its October 30, 2014, judgment incorporating the mediated agreement was entered.
However, the case number contained within the caption of the circuit court’s July 20, 2015, order denying the Rule 60(b) relief includes the same suffix as the circuit court’s September 22, 2015, order denying the former husband’s modification petition. Additionally, it is apparent from the record that the Rule 60(b) relief requested by the former husband was included within the body of his modification petition and that he did not file a separate motion asking the circuit court to relieve him from the October 30, 2014, judgment.
Furthermore, although the circuit court granted the parties’ “joint motion to bifurcate” the hearings on the Rule 60(b) claims and the modification claim, nothing in the circuit court’s July 20, 2015, order indicates that it intended to sever the claims into separate actions. See Key v. Robert M. Duke Ins. Agency, 340 So.2d 781, 783 (Ala.1976) (holding that the substance of a court’s action controls whether *895 it has ordered that claims be severed or ordered that separate trials be held), Because “[a] judgment is generally not final unless all claims ... have been decided,” Faulk v. Rhodes, 43 So.3d 624, 625 (Ala. Civ.App.2010), we conclude that the circuit court’s July 20, 2015, order was not a final judgment and that the former husband’s appeal properly invoked this court’s jurisdiction to review that order. See New Acton Coal Mining Co. v. Woods, 49 So.3d 181, 184-85 (Ala.2010) (holding that an order separating trials leads to one final judgment, but that an order severing claims leads to independent actions with final judgments entered independently). We will therefore address the merits of the former husband’s argument regarding the Rule 60(b) relief that he requested.
“ ‘ “[T]he decision whether to grant or deny [a Rule 60(b)] motion is within the sound discretion of the trial judge, and the appellate standard of review is whether the trial court abused its discretion.” ’ ” Baker v. Baker, 862 So.2d 659, 661 (Ala.Civ.App.2003) (quoting Osborn v. Roche, 813 So.2d 811, 815 (Ala. 2001), quoting in turn Ex parte Dowling, 477 So.2d 400, 402 (Ala.1985)). “Also, ‘where there are disputed issues of fact to be resolved and the trial court has received ore tenus evidence, the ore tenus rule is applicable to our review of a ruling on a Rule 60(b)[] motion.’” Thurman v. Thurman, 74 So.3d 440, 445 (Ala.Civ.App.2011) (quoting Ex parte A & B Transp., Inc., 8 So.3d 924, 932 (Ala.2007)).
With regard to his requested Rule 60(b) relief, the former husband principally argues that he presented sufficient evidence for the circuit court to determine that he had been under duress when he signed the mediated agreement. In support of his argument, he cites Allen v. Allen, 903 So.2d 835, 843 (Ala.Civ.App.2004), in which this court stated: “‘“Duress” has been defined as subjecting a person to improper pressure which overcomes his will and coerces him to comply with demands to which he would not yield if acting as a free agent....’” (Quoting Delchamps v. Delchamps, 449 So.2d 1249, 1250 (Ala.Civ.App.1984).) In Allen, we also noted that duress must be proven by clear and convincing evidence. Id.
The former husband argues that he was overwhelmed when he signed the mediated agreement because of the stress and anxiety caused by his current wife’s cancer' treatment, their medical bills, their monthly financial obligations, his fear of losing their home, and his fear of going to jail (presumably as a result of his nóncom-pliahce with the circuit court’s divorce judgment), and because his attorney had “strongly suggested” that he sign the mediated agreement.
However, during the Rule 60(b) hearing, the former husband also testified that he had been represented by counsel of his choice throughout the mediation negotiations. Furthermore, he testified: “I knew what I had read.” He also stated: “No one forced me to sign [the mediated agreement].” Thus, it was not error for the circuit court to determine that the former husband had failed to prove by clear and convincing evidence that his will had been overcome and that he was coerced into signing the agreement.[8]
*896 The former husband also contends that the October 30, 2014, judgment based on the mediated agreement should be set aside because its terms are unfair or inequitable. He again cites Allen and argues that judgment incorporating the mediated agreement should be set aside “‘based upon the inequity of the agreement itself.’ ” 903 So.2d at 844 (quoting Kohn v. Kohn, 52 Ala.App. 636, 640, 296 So.2d 725, 729 (Civ.App.1974)(emphasis omitted)). He argues that he presented evidence indicating that his compliance with the terms of the mediated agreement would have created a financial hardship.
The record indicates that, under the terms of the mediated agreement, the former husband’s existing $6,000-a-month periodic-alimony obligation was reduced; the parties agreed to an initial reduction to $4,823 a month, and, provided the former husband timely met his obligation to make payments toward his alimony arrearage, his monthly alimony obligation would decrease, in steps, to $3,500. In other words, it does not appear from the record that the circuit court’s October 30, 2014, judgment would have imposed any new or additional obligations upon the former husband, had he complied with the terms of the mediated agreement.[9] His prospective periodic-alimony obligation was actually reduced by the circuit court’s October 30, 2014, judgment, presumably because the parties knew that his retirement was imminent.
At the Rule 60(b) hearing, the former husband testified that his gross income in 2014 was approximately $240,000, that his salary had been $225,000 in the preceding four or five years, that he was currently receiving income from Brown-Forman and the Social Security Administration, and that he continued to have access to several assets and accounts. In light of the above, we cannot conclude that the circuit court erred in finding that the terms of the mediated agreement were equitable.
II. Modification Petition
The former husband also argues that the circuit court erroneously denied his modification petition.
“ ‘Periodic alimony and its subsequent modification are matters resting within the sound discretion of the trial court, and the trial court’s judgment as to those issues will not be reversed absent a showing of an abuse of discretion. Tiongson v. Tiongson, 765 So.2d 643, 645 (Ala.Civ.App.1999).
[[Image here]]
“““Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong.’ ” ’ ”
Goldman v. Goldman, 197 So.3d 487, 491 (Ala.Civ.App.2015)(quoting Santiago v. Santiago, 122 So.3d 1270, 1278 (Ala.Civ.App.2013), quoting in turn Bray v. Bray, 979 So.2d 798, 800 (Ala.Civ.App.2007), quoting in turn Sellers v. Sellers, 893 So.2d 456, 457-58 (Ala.Civ.App.2004)).
The party seeking the modification must demonstrate that a material change in circumstances has occurred since the entry of the trial court’s previous judgment. Santiago v. Santiago, 122 So.3d at 1278. Furthermore,
“[e]ven if a material change of circumstances is shown, a trial court is not *897 required to modify alimony. Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App.1995 (citing Mullins v. Mullins, 475 So.2d 578 (Ala.Civ.App.1985)). Factors the trial court should consider in determining whether to modify an alimony award include, among other things, the earning capacity of each spouse, the payee spouse’s need for alimony, the payor spouse’s ability to pay alimony, and each spouse’s estate. Kiefer, 671 So.2d at 711 (citing Posey v. Posey, 684 So.2d 571 (Ala.Civ.App.1994)). When, as in this case, a provision awarding periodic alimony is based upon the agreement of the parties, that provision should not be modified without close scrutiny, see, e.g,, Trammell v. Trammell, 589 So.2d 743 (Ala.Civ.App.1991), especially when a short time, in this case only approximately 17 months, separates the modification hearing from the previous entry of the divorce judgment. See Jeffcoat v. Jeffeoat, 423 So.2d 888 (Ala. Civ.App.1982), Roberts v. Roberts, 395 So.2d 1035 (Ala.Civ.App.1981), and Taylor v. Taylor, 369 So.2d 1240 (Ala.Civ.App.1979) (cases involving a relatively short period separating the entry of the divorce judgment from the modification hearing; in each case, the period was less than two years).”
Id. at 1278-79.
The former husband argues that he proved that he was financially unable to continue paying the periodic alimony ordered by the circuit court and that the circuit court therefore erred in failing to reduce or terminate his periodic-alimony obligation. In support of his argument, the former husband relies upon principles enunciated in Reddish v. Reddish, 455 So.2d 891 (Ala.Civ.App.1984). In that case, this court stated: “If it is shown, as in this case, that at the time of the prior decree or agreement, there existed no circumstances supporting any reasonable possibility of performance, and that such condition continues, there must be cause for change.” Id. at 892.
This court’s decision in Reddish affirmed the trial court’s judgment reducing the mother’s agreed-upon child-support obligation from $200 per month to $37.50 every two weeks, and periodic alimony was not at issue in that case. The mother in Reddish had been unemployed when she entered into the agreement and later obtained employment earning net income of $320 per month. The former husband acknowledges that, at the time he entered into the mediated agreement, he was employed and that he earned gross income of approximately $240,000 in 2014. He argues that a material change in circumstances had occurred because his net monthly income had been reduced to $6,026.24 at the time of the modification hearing. He argues that, because his monthly expenses total $5,572.97, he is unable to pay the periodic alimony set out in the mediated agreement. He also argues that, even if his current wife’s monthly net income of $2,465[10] is taken into consideration, he is still unable to pay the periodic alimony set out in the mediated agreement.
It is apparent from the circuit court’s order that it considered, among other things, the evidence listed above. In support of its decision, the circuit court found that the former husband has the capacity to earn more income and that he continues to have access to several assets and accounts. The former husband does not contend that the circuit court erred in *898 its consideration of the evidence that it cited in support of its order.
The circuit court’s order indicates that it did not consider any alleged changes in circumstances that had occurred during the roughly 75-day period between the entry of its October 30, 2014, judgment and the day on which the former husband filed his modification petition to be sufficiently material to warrant reducing the periodic-alimony obligation that he had agreed to during mediation. Given the short period that had passed since the entry of the October 30, 2014, judgment and the close scrutiny with which the circuit court was obligated to consider the former husband’s modification petition, we cannot conclude that the circuit court’s findings were clearly erroneous, nor can we conclude that the circuit court abused its discretion by denying the former husband’s modification petition.
III. Contempt
“ ‘[WJhether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.’ ”
Boykin v. Boykin, 659 So.2d 664, 666 (Ala.Civ.App.1995) (quoting Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994)).
“ ‘Rule 70A(a)(2)(D) defines “civil contempt” as a “willful, continuing, failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” ’
“Stamm v. Stamm, 922 So.2d 920, 924 (Ala.Civ.App.2004). Moreover, in order to hold a party in contempt under Rule 70A(a)(2)(D), the trial court must find that the party willfully failed or refused to comply with a court order. See T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).”
Kreitzberg v. Kreitzberg, 131 So.3d 612, 628 (Ala.Civ.App.2013).
The former husband argues that he did not willfully violate the circuit court’s October 30, 2014, judgment and that it was therefore error for the circuit court to find him in contempt of that judgment. In its September 22, 2015, order, the circuit court found “[t]hat the [fjormer [hjusband is ... in willful contempt for failure to pay monthly alimony as ordered.” Thus, the question is whether sufficient evidence was presented to support the circuit court’s finding that the former husband had willfully violated its October 30, 2014, judgment.[11]
The circuit court made the following findings in that regard:
“The [f]ormer [h]usband essentially admitted that at the time he signed the agreement, he had no intention of abiding by its terms. The Court also notes that the [fjormer [h]usband appears to have a pattern of not abiding by agreements and orders that have been en *899 tered relative to the divorce; and his lack of compliance have worked a hardship upon the [flormer [w]ife.”
Those findings were supported, in part, by the following testimony from the former husband:
“Q: At the time you signed the [mediated agreement,] did you intend to comply with all of the terms in [it]?
“A: I intended to comply with what I could.
“Q: My question was, did you intend to comply with all of them?
“A: No, because I couldn’t comply with it. I didn’t have the funds.”
As discussed above, sufficient evidence was presented from which the circuit court could have determined that the former husband had been financially able to comply with the terms of the mediated agreement and the circuit court’s October 30, 2014, judgment that incorporated it. Furthermore, it was not error for the circuit court to find that he had voluntarily agreed to do so.
In light of the above evidence and the former husband’s testimony regarding his intentions when the mediated agreement was executed, we cannot conclude that the circuit court was plainly and palpably wrong when it determined that the former husband willfully violated its October 30, 2014, judgment. The circuit court was therefore within its discretion when it found him in contempt, and the order finding him in contempt is due to be affirmed.
The former wife’s request for an attorney fee on appeal is denied.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. It is undisputed that the circuit court’s October 30, 2014, judgment incorporated the mediated agreement, but a copy of that judgment does not appear in the record. A signed copy of the mediated agreement is in the record, however.

. The record indicates that the mediated agreement was executed on October 20, 2014.

. Because the date mentioned in this provision is earlier than the date on which the mediated agreement was executed, it appears that the language of the agreement should be interpreted to mean that the former husband owed or would owe the former wife $4,823 in periodic alimony for the month of October 2014.

. Although Rule 42(b), Ala. R. Civ, P., was not cited specifically in the parties' joint motion, the language used therein indicates that the parties’ request that the hearings be conducted separately was more like a request for separate trials under Rule 42(b) than a request that the former husband's claims be severed under Rule 21, Ala. R. Civ. P.

. The record does not contain any evidence concerning the legal status of the condominium-rental business that the former husband jointly owned with his current wife. The supplemental record contains a copy of their Form 1040 joint federal income-tax return for 2014, Schedule E of which itemizes income and expenses associated with two rental prop *892 erties in Gulf Shores, one of which appears to have been sold in February 2014.

. On appeal, the former husband argues that his monthly net income is $6,026.24—the amount listed on a summary that he entered into evidence at the separate hearing on his modification petition.

. The record indicates that amount was stipulated to by the parties.

. He also argues mat the circuit court’s finding was erroneous because ‘‘[t]he former wife offered no evidence to contradict the stress that the former husband was suffering.” However, " ‘[t]he party seeking to set aside an agreement on grounds of duress must prove by clear and convincing evidence that the duress existed at the time of execution.’ ” Allen, 903 So.2d at 843 (quoting Delchamps, 449 So.2d at 1250)(emphasis added). It was not the former wife's burden to prove that the former husband entered into the mediated agreement voluntarily,

. The record indicates that, pursuant to the terms of the mediated agreement, interest was assessed as a result of the former husband’s failure to pay the agreed-upon periodic alimony.

. In addition to her monthly Social Security income, the former husband also testified at the modification hearing that his current wife receives approximately $700 in retirement income each month.

. Citing Sewell v. Butler, 375 So.2d 800 (Ala.Civ.App.1979), the former husband argues that the former wife was required to prove beyond a reasonable doubt that he was able to comply with the circuit court’s judgment because he had presented evidence that he was financially unable to do so. However, in Sewell, this court stated that the former wife was required to make such a showing only after the former husband had presented "un-contradicted figures which showed he was financially unable to purge himself of the contempt, as ordered.” Id. at 801. The former husband in this case purged himself of the contempt, as ordered, and thus was clearly able to comply with the circuit court's contempt judgment. The former wife was therefore not required to prove beyond a reasonable doubt that he was financially able to purge himself of contempt.